[L. A. No. 2485. Department Two.—December 31, 1910.]

W. J. DAVIS, Appellant, v. W. B. JUDSON et al., Respondents. W. H. Brown, as Administrator of the Estate of L. M. Wheeler, Deceased, Appellant.

Quieting Title—Action Equitable in Form—Legal Issues—Jury Trial.—Although an action be brought in form under section 738 of the Code of Civil Procedure, as an equitable action to quiet title to land, if, in reality, it is an action for the recovery of specific real estate, and the issues made are purely of a legal character and such as are cognizable in a court of law, the substance must control the form, and a party has the right to a jury trial under section 592 of that code.

Id.—Where Action is Legal or Equitable.—Whether an action involves legal issues, or issues of equitable cognizance, must depend upon the facts alleged in the particular case.

Id.—Pleading — Specific Performance — Verbal Contract to Sell Land—Re-execution of Deed—Equitable Action.—The complaint

was drafted on two theories, the first asserting an oral agreement for the sale of land to the plaintiff's grantor, the performance of the agreement, so that the latter became the equitable owner of the property and entitled to a conveyance, that no conveyance was made, and that the court should decree specific performance of the contract, and compel a conveyance from the original vendors, and the other defendants, alleged to be *mala fide* purchasers; the second theory was, that if the original vendee got a deed, (there was no allegation that he did) he had lost it, and the prayer was for its re-execution. The defendants denied such allegation, and set up the defenses of laches, and of a *bona fide* purchase for a valuable consideration. None of the parties alleged actual possession of the land, or sought to be awarded the possession. *Held,* that the action presented purely equitable issues, and that the plaintiff was not entitled to a jury trial as matter of absolute right.

ID.—EVIDENCE—DISREGARD OF DIRECT TESTIMONY—INHERENT IMPROBABILITY.—As a general rule, the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted by the court as proof of the fact. This rule, however, has its exceptions, and the most positive testimony may be contradicted by inherent improbabilities as to its accuracy contained in the witness's own statement of the transaction, or there may be circumstances in evidence in connection with the matter which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement, and influence it to disregard his positive testimony as to a particular fact.

ID.—WEIGHT OF TESTIMONY FOR TRIAL COURT—APPEAL.—As it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control its finding or conclusion denying the testimony credence, unless it appears that there are no matters or circumstances which at all impair its accuracy.

ID.—DELIVERY OF DEED CONTRADICTED BY OTHER CIRCUMSTANCES.—In the present case, notwithstanding the direct testimony of the plaintiff's grantor that he was sure that he had obtained a deed to the property in question, and there was no direct testimony impeaching him or contradicting his statement, still his conduct, as disclosed by his other testimony and the other circumstances in evidence were such that the court had a right to conclude that they were inconsistent with the execution of any conveyance, and warranted the rejecting as improbable his statement that such a conveyance had been made.

ID.—STATUTE OF FRAUDS—ORAL CONTRACT TO SELL LAND—PART PERFORMANCE.—An oral contract for the conveyance of land is within the statute of frauds, and can only be taken out of the statute and enforced in equity by reason of part performance.

ID.—PAYMENT OF PURCHASE PRICE—ACTUAL POSSESSION BY VENDEE.—Payment of the purchase price does not of itself constitute part

performance. Such part performance can only be asserted where it is shown that the vendee had been given and had taken actual possession of the property pursuant to the terms of the contract and had continued to hold such possession, or had made valuable improvements on the land on the faith of the contract.

ID.—ELEMENTS OF ACTUAL POSSESSION.—To constitute such actual possession by the vendee, warranting the relief of specific performance, there must exist the physical fact of possession by him, visible, notorious, and exclusive, such as manifests definitely and clearly that he is claiming and asserting a distinctive ownership of the property, inconsistent with the right of ownership or possession in any other person.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Charles Lantz and Walton J. Wood, for Plaintiff and Appellant.

Ernest E. Wood, for Appellant W. H. Brown.

Julius Lyons, for Respondent W. B. Judson.

Daniel M. Hammack, for Respondent Emma M. Wiley.

Williams, Goudge & Chandler, for Respondents Stanley F. McClung et al.

LORIGAN, J.—This action was brought to quiet title to lots 12 and 13, block 6, of the subdivision of certain lots in the Highland Park tract in the county of Los Angeles.

It was alleged in the complaint that in October, 1885, one G. W. Morgan was the owner of the lots in controversy and on that date conveyed them to the defendant trustees of the University of Southern California, a corporation, for its benefit; that in December, 1885, the said trustees entered into an oral agreement with one C. N. Wilson, whereby Wilson agreed to furnish five hundred dollars worth of lime to be used in the construction of the main building of the university, and said trustees agreed, in consideration thereof, to convey to Wilson said two lots of land; that this agreement was fully executed

by Wilson, who, towards the end of 1886, furnished the lime to the trustees; that by reason of the performance of the agreement on the part of Wilson he immediately became the equitable owner of said lots and that said trustees of the University of Southern California thereafter continuously held the title to the same in trust for him, and that plaintiff as his successor in interest is now entitled, as against said trustees and those who claim under them, to a deed of conveyance of said lots; that the trustees of the said university have never executed any deed of conveyance of said property to said Wilson or his assigns, or, if such deed was executed, the same has been lost by said Wilson; that on December 19, 1902, the said trustees of the University of Southern California executed a quitclaim deed to one S. F. McClung, who on the next day executed a similar conveyance to the defendant W. B. Judson, but that said deeds were made with full knowledge of the facts above stated and of the rights, equities, and interests of said Wilson; that said deeds were not made in good faith, nor for a consideration adequately representing the actual value of the property; that said Wilson has been seised and possessed of the said property within five years last past, and has executed a deed to plaintiff of all the title owned by him in said lots, and plaintiff is the owner of said property and has succeeded to all the rights of said Wilson, and is entitled to have and receive a conveyance of all title which is held or vested in said trustees, or defendant W. B. Judson, or any one claiming under them. Adverse interest against plaintiff, but without right, is then alleged to be asserted by said trustees and Judson and other designated defendants.

The prayer of the complaint was that plaintiff be decreed to be the equitable owner of said lots of land, and entitled to a deed of conveyance from all of the defendants, and that the court require them to make such conveyance, or, in default thereof, that a commissioner be appointed to execute the same in their names and that the title of plaintiff to said lots be quieted.

The defendants answered, denying the allegations of the complaint, interposed the plea of the statute of limitations and a bar by laches. In addition, the defendants Judson and Wiley set up that they were *bona fide* purchasers from the trustees of the university of said lots for value and without notice of

any equities, rights, or claims of Wilson to the same, if he ever had any.

The administrator of the estate of L. M. Wheeler, deceased, one of the defendants, filed an answer and cross-complaint, the latter based on the same allegations in the complaint of plaintiff as to the oral agreement between Wilson and the trustees, and its execution on the part of Wilson; an equitable ownership in the lots thereby vesting in him, and a conveyance in 1887 by Wilson to said Wheeler of lot 12. The administrator asked for a decree similar to that asked by the plaintiff, but requiring the execution of a deed of conveyance for this lot 12 to him as administrator of Wheeler's estate.

The court found that Morgan had conveyed these lots to the trustees of the university in October, 1885, the making of the oral agreement between Wilson and the trustees as alleged in the complaint, and that Wilson had performed his part of the agreement towards the end of December, 1885. The court found, however, that the trustees never executed any deed to Wilson for the lots; that Wilson never entered into or had actual physical possession of them; that for twenty years after the making of this oral contract between himself and the trustees, Wilson made no claim to said lots or any right, title, or interest in them, nor demanded any deed therefor, and that no sufficient reason or excuse for his failure to do so existed; that up to December 19, 1902, the trustees continued to hold possession of said lots, claiming to be the sole owners thereof and entitled to exclusive possession; that on December 19, 1902, said trustees made a quitclaim deed of said lots to defendant S. F. McClung, who on December 20, 1902, also by quitclaim deed conveyed them to defendant W. D. Judson; that McClung, in receiving said deed and conveying to Judson, was acting solely and on behalf of the trustees of the university, who received the consideration of two hundred and seventy-five dollars paid by Judson to him for said lots; that this consideration represented the fair market value of the lots, considering the clouded condition of the title thereto when said deed was made, and that the said deed from the trustees to McClung, and from McClung to Judson, were made in good faith and without knowledge of any agreement or transaction between said Wilson and said trustees relative to said lots or either of them.

In addition, it was found that on November 9, 1887, Wilson

had made a deed of lot 12 to one L. M. Wheeler; that on May 4, 1903, in an action in which Judson, the defendant here, was there plaintiff, and said L. M. Wheeler, there the defendant, judgment was given and made decreeing that said Judson was the owner of said lot 12 and that Wheeler was without title or interest therein; that thereafter, in March, 1909, said Judson conveyed said lot 12 to the defendant Emma M. Wiley; that prior to the commencement of this action (the evidence shows in August, 1904) Wilson made a quitclaim deed of the two lots in question to plaintiff.

Other findings are made, not material for consideration.

As conclusions of law from the facts found, the court determined that neither plaintiff nor the estate of Wheeler had any title or interest in the property, but that the defendant Judson was the owner of lot 13 and defendant Emma M. Wiley was the owner of lot 12. Judgment was entered accordingly, and from said judgment and an order denying their motion for a new trial both plaintiff and the administrator of the estate of Wheeler appeal.

Several of the essential findings are assailed by defendants as not sustained by the evidence; the accuracy of certain conclusions of law are questioned by them, and it is insisted that the court committed error in certain of its rulings.

As to the latter, the only one which merits any consideration is the claim of plaintiff that the refusal of the court to allow his demand for a jury trial was error, insisting that, under the authority of *Donahue* v. *Meister*, 88 Cal. 121, [22 Am. St. Rep. 283, 25 Pac. 1096], and *Newman* v. *Duane*, 89 Cal. 597, [27 Pac. 66], he was entitled to have the issues in the case passed upon by a jury. But the rule of these cases has no application here. Undoubtedly, although an action be brought in form under section 738 of the Code of Civil Procedure, as an equitable action to quiet title to land, if, in reality, it is an action for the recovery of specific real estate and the issues made are clearly of a legal character and such as are cognizable in a court of law, the substance must control the form, and as a party is specially given the right to a trial by jury where an action is brought to recover specific real property (Code Civ. Proc., sec. 592) this right cannot be defeated by any particular form which the action may take. It was so held in the cases cited by appellants. In those cases

in the form of the complaints, the actions were of an apparently equitable nature, simply to quiet title against alleged asserted adverse claims, but when the issues were framed it appeared that in reality the right to possession of specific real property was the real issue involved, and it was held that under the guise of an equitable action the right to a trial by jury accorded a party, where the action was in reality an action for possession of real property, could not be defeated. In those cases, when the issues were made, no matter what the form of the complaint was, the question for determination called only for a judgment of law; there was nothing upon which to base a decree in equity. But in the case at bar no issues of a purely legal character are involved. Whether an action involves legal issues, or issues of equitable cognizance, must depend upon the facts alleged in the particular case, and when the facts alleged here and the issues raised are considered, it is apparent that they are strictly of an equitable nature. None of the parties to the action alleged any actual possession of the lots in question or sought to be awarded possession. The complaint was drafted on two theories: The first theory was that an oral agreement for the sale of these lots was made between Wilson and the trustees; that certain things were done by the parties to the agreement under which Wilson became the equitable owner of the property and entitled to a conveyance thereof; that no conveyance was made by the trustees to him, and that the court should decree specific performance of the contract in his behalf as successor to the rights of Wilson, and to compel a conveyance from the trustees and the other defendants who are alleged to have taken their conveyance from the trustees with knowledge of Wilson's equitable rights; the second theory was that if Wilson got a deed (it is not alleged that he did), he lost it and asked for a decree requiring its re-execution. The defendants denied these allegations, asserted the bar of laches, and set up that they—the defendants Judson and Wiley—claimed the property as *bona fide* purchasers from the trustees, without any notice of the asserted rights or equities of Wilson, and for a valuable consideration. No issues cognizable in a court of law, and for the trial of which the parties were entitled to a jury, were presented under these pleadings. Such as were presented were equitable issues, and whether such issues should

be tried by a jury or not was a matter for the discretion of the trial court; neither party had an absolute right to demand a jury trial. (*Crocker* v. *Carpenter*, 98 Cal. 418, [33 Pac. 271]; *Angus* v. *Craven*, 132 Cal. 691, [64 Pac. 1091]; *Churchill* v. *Louie*, 135 Cal. 608, [67 Pac. 1052].)

Coming now to the merits of the appeal. Appellants insist that the finding of the court that no deed was ever executed by the trustees of the university to Wilson is not sustained by the evidence.

The only evidence on the subject is that of Wilson himself, who as a witness in the case testified: "I am sure I received a deed of conveyance of the lots from the trustees of the Morgan trust."

It is insisted by appellants that this testimony of Wilson stood uncontradicted and that the court had no right arbitrarily to reject it and find to the contrary.

While it is the general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted by the court as proof of the fact, this rule has its exceptions. The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness's own statement of the transaction; or there may be circumstances in evidence in connection with the matter, which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact; and as it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control its finding or conclusion denying the testimony credence, unless it appears that there are no matters or circumstances which at all impair its accuracy. This is a situation which cannot be said to be presented in this case. Wilson was a lawyer and it is to be assumed had full knowledge that in order to effectually protect his rights to this property, if he had a deed, he should have recorded it. He was the grantor of plaintiff, verified the complaint in his behalf in this action, and was his witness on the trial. Whether the trustees had made a deed to Wilson or not was a material issue in the case, as all the defendants in their answers denied that such a deed was made. All that

Wilson testified to as to the execution of such a deed was that he was sure he had received one. He does not state when he received it or its character or contents. Neither does he testify directly that the deed was ever lost, but simply that his documents and papers were carried away from some place where they were stored in 1899 while he was in quarantine, and leaves the possible inference that this deed was among those papers and documents. Knowing that to protect himself, if he had a deed he should have recorded it, he failed to do so, and this failure covered a period of some thirteen years after he says he secured the deed. His excuse for not recording it at once is that he wanted to exchange one of the lots with Morgan for another, which Morgan refused to do. But years elapsed after his ineffectual negotiations to that end and before he lost his papers and documents as claimed. Never having inclosed the lots or placed any improvements upon them —having no actual possession of the property—he must have known that the deed which he claimed to have received being lost, in order to clearly support his claim to the property, he should have either gotten another deed from the trustees, or have proceeded to establish his title under the lost conveyance act, and he never made any attempt to do either. Wilson in 1887 had made a deed to his sister-in-law, L. M. Wheeler, of lot 12. Some time prior to January, 1902, defendant Judson (but before he obtained his conveyance of these lots from the trustees), brought an action against said L. M. Wheeler and others to quiet his title to said lot 12 and also to lot 13. Wilson on behalf of Judson made an affidavit as to the non-residence in California of said L. M. Wheeler, for the use of Judson in obtaining an order for publication of summons against Wheeler. When his attention was called to this fact on the trial, Wilson testified that the attorney for Judson, who obtained the affidavit, did not state what property the suit related to nor explain the purpose of the action. But the court was hardly required to credit this statement, or view the circumstances in any other light than that the readiness of Wilson to assist Judson in quieting his title to one lot, 13, which Wilson himself claimed to own, and 12, which he had conveyed to his sister-in-law, was consistent only with the fact that Wilson knew that he had never acquired any deed under which either he or his grantee could assert title to either of

these lots. Further, it appears that after Wilson made his deed of these lots to the plaintiff in this action, and when this suit to quiet title to them was brought, the complaint contained the allegation that: "Plaintiff is informed and believes and upon such information and belief alleges that said trustees have not executed any deed of conveyance of said property to said C. N. Wilson or his assigns; or if such deed was executed to said Wilson the same has been lost by said Wilson." Wilson as agent of plaintiff, who was absent from the county of Los Angeles, verified this complaint, stating, as the law requires he should, that he had read the complaint, that its contents were true to his own knowledge except as to matters stated on information or belief, and that as to them he believed it to be true. It is too clear for discussion that such an uncertain and indefinite allegation with reference to a conveyance sworn to by Wilson to be true, after reading it, is inconsistent with any testimony of Wilson given on the trial that he had in fact obtained the deed.

So that, within the rule as we have stated, while the trial court had the statement of Wilson that he was sure that he had obtained a deed from the trustees, and although there was no direct testimony impeaching him or contradicting his statement, still the conduct of Wilson, as disclosed by his other testimony and the other circumstances in evidence, were such that the court had a right to conclude that they were inconsistent with the execution of any conveyance to Wilson, and warranted the rejecting as improbable his statement that such a conveyance had been made. (*Blankman* v. *Vallejo,* 15 Cal. 645; *Baker* v. *Fireman's Fund Ins. Co.,* 79 Cal. 41, [21 Pac. 357]; *Chico Bridge Co.* v. *Sacramento Tr. Co.,* 123 Cal. 184, [55 Pac. 780].)

Appellants next question the finding that Wilson never entered into or had actual physical possession of these lots at any time.

The possession of Wilson was pertinent to two questions arising in the case: One, whether the defendant was a purchaser in good faith without notice of any right or claim of Wilson, or his grantee Wheeler to either of the lots; the other, whether Wilson had or took such possession of the lots immediately after he performed his part of the agreement with the trustees respecting them as would constitute part per-

formance of the contract, entitling him, or his successors, to a decree for specific performance. On the last proposition the claim of the appellants is, that even if the trustees made no deed to Wilson, still the evidence shows that Wilson performed his part of the contract as to the purchase of these lots; that he was given and took actual possession of the lots under the contract, and that he and his grantee Wheeler continued and were in such possession at the time the trustees made a conveyance of these lots to Judson; that the court should have so found instead of finding to the contrary, and that a proper finding of actual possession, together with the finding of performance on Wilson's part of the contract which the court did make, would have entitled appellants to a decree for specific performance.

The contract between the trustees and Wilson relative to these lots not being in writing was within the statute of frauds and unenforceable. It could only be taken out of the statute and enforced in equity by reason of part performance. Payment of the purchase price did not of itself constitute part performance. (*Forrester* v. *Flores,* 64 Cal. 24, [28 Pac. 107].) Such part performance could only be asserted where it was shown that the vendee had been given and had taken actual possession of the property pursuant to the terms of the contract and continued to hold such possession, or had made valuable improvements on the land on the faith of the contract.

On the subject of possession of these lots by him, Wilson testified that after he had furnished the lime to the trustees he and Doctor M. M. Bouvard, then president of the university, drove out together to Highland Park "for the purpose of looking over the lots which Mr. Morgan had conveyed to aid in the construction of such university building, and for the selection by myself of the two lots which I would take in payment for the $500 worth of lime. I selected the two described in the complaint and then went upon the lots. . . . I visited the lots referred to every year or two; and took parties out to see them in an effort to sell them. No period of time as much as five years elapsed without my entering upon the lots. . . . I did not put any fence about the lots nor make any improvements thereon." This is the only evidence in the record of any possession Wilson ever took or had of these lots,

and, at best, this was a nominal or mere technical one, while possession which must be taken in order to meet the equitable requirement of part performance, and warrant specific performance of the contract, is actual possession by the vendee. The ground upon which possession, as constituting part performance and authorizing specific performance is supported, is that the vendee would be exposed to liability as a trespasser, if he could not invoke the protection of the contract. The uniform rule, however, is that such possession must be an actual possession by the vendee; there must exist the physical fact of possession in him; a possession visible, notorious, and exclusive, such as manifests definitely and clearly that the vendee is claiming and asserting a distinctive ownership of the property, which is inconsistent with the right of possession or ownership in any other person. Less than this could not constitute a vendee a trespasser, and hence this actual possession must, under the authorities, exist to constitute such part performance as warrants the equitable interposition of a court to decree specific performance. (*Arguello* v. *Edinger,* 10 Cal. 150; *Calanchini* v. *Branstetter,* 84 Cal. 249, [24 Pac. 149] ; *Foster* v. *Maginnis,* 89 Cal. 264, [26 Pac. 828] ; *Fulton* v. *Jansen,* 99 Cal. 587, [34 Pac. 331] ; Pomeroy on Contracts (Spec. Per.), sec. 120 et seq.; Browne's Statute of Frauds, sec. 472, 476.) This essential character of possession clearly Wilson never had.

Reaching the conclusion, therefore, as we do, that the finding of the court that Wilson never obtained any conveyance to either of these lots is sustained by the evidence, and that the finding is equally correct that he never took or had any actual possession of them at any time which entitled him or his grantees Wheeler or the plaintiff, to a decree of specific performance, it is of no moment to consider the attack made by appellant on the further finding of the court that Judson, when he took his deed from the trustees, was not a purchaser for value and without knowledge or notice of any equitable or legal claim of Wilson, or Wheeler, or plaintiff to the lots. The deed from the trustees was executed several years before plaintiff obtaind his deed from Wilson, and as Wilson never had any enforceable equitable rights to these lots when the trustees conveyed them to Judson, and had never acquired any legal title thereto and never had or took any actual pos-

session of the property, there was no valid claim or interest to them existing in favor of Wilson of which Judson could have had any knowledge or notice. No such claim subsisting, the deed from the trustees to Judson vested him with full legal and equitable title to the lots.

As far as the claims of the administrator of Wheeler's estate are concerned, they are also disposed of under the foregoing consideration. Wheeler never acquired any legal title to lot 12 under her deed from Wilson, as he had no legal title. She never had any actual or in fact any possession of the lot described in her deed, nor any enforceable equities as to it, independent of those asserted on behalf of Wilson, and for the same reason that Judson acquired full title to lot 13 against any asserted right in favor of Wilson, so did he acquire title to lot 12 against the asserted claim of the administrator of Wheeler's estate, and his conveyance to the defendant Wiley of this lot 12 vested in her full legal and equitable title to it.

The judgment and order appealed from are affirmed.

Henshaw, J., and Melvin, J., concurred.