[Civ. No. 6690. Third Dist. Aug. 17, 1942.]

ELMER NORGARD, Appellant, v. ESTATE OF CHRIS NORGARD, Deceased, Respondent.

Preston & Gibson and Lilburn Gibson for Appellant.

Taft & Spurr for Respondent.

SCHOTTKY, J. pro tem.—Appellant was administrator of the estate of his father, Chris Norgard. He filed a claim against

the estate which claim set forth in substance that on February 5, 1938, claimant owed said Chris Norgard the sum of $1,866.44 on a promissory note, and that on said date said Chris Norgard stated to, and agreed with claimant that if the latter would take care of the business affairs of said Chris Norgard, under the latter's instructions from that date "until the date of the death of Chris Norgard," the claimant would be paid for such service the full amount due on said note at the date of the death of Chris Norgard, plus the actual and necessary expense incurred by claimant in looking after said business affairs; that it was mutually agreed between claimant and said Chris Norgard that in consideration of the promise of claimant so to do, on the date of the death of Chris Norgard, said promissory note would be considered canceled; that claimant did take care of the business affairs of Chris Norgard until the latter's death which occurred on September 5, 1938, and in so doing, incurred and paid out certain expenses enumerated in the claim. The claim then concludes:

"Claimant therefore claims the sum of $1866.44 with interest thereon from February 15th, 1938, plus the sum of $311.10 as aforesaid, *all* from the estate of Chris Norgard, deceased."

The claim was presented to the judge of the court and rejected by him, and appellant thereupon filed suit against the estate, and the judge of the court appointed attorneys to represent the estate in the litigation, all in accordance with section 703 of the Probate Code.

The foregoing facts are substantially set forth in the complaint. Count 1 of the complaint is based upon that portion of the claim which seeks the amount of the promissory note plus expenses incurred by Elmer Norgard, and count 2 is based upon their agreement that if plaintiff would perform said services for Chris Norgard from the 5th day of February, 1938, to the date of the death of Chris Norgard, that at the date of the death of Chris Norgard said promissory note would be considered canceled and paid in full.

Defendant estate filed an answer admitting the indebtedness from appellant to deceased, and denying the other material allegations of the complaints for lack of information or belief, and a special defense to each count was interposed that the agreement was not in writing, and was therefore invalid and barred by the provisions of subdivision 6 of sec-

tion 1973 of the Code of Civil Procedure and subdivision 6 of section 1624 of the Civil Code. A cross-complaint was also filed seeking to recover on the promissory note from appellant to deceased. Appellant filed an answer to the cross-complaint in which he claimed that said promissory note had been paid in full, ''as more fully appears by the allegations contained in plaintiff's complaint on file herein, which allegations are hereby referred to and incorporated herein,'' said answer concluding with the following prayer:

''Wherefore, said cross defendant prays that cross complainant take nothing herein and that the prayer of plaintiff's complaint on file herein be granted, and for such other and further order and judgment as may be proper in the premises.''

Prior to the time of the trial, defendant estate filed a dismissal of the cross-complaint with the clerk of the court.

The action went to trial, and when appellant attempted to testify as to the conversation and agreement with deceased, objection was made upon two grounds: One, that the contract set forth in his claim was within the statute of frauds (subd. 6 of § 1973, Code Civ. Proc.); and two, that under subdivision 3 of section 1880 of the Code of Civil Procedure, appellant could not testify as to any matter or fact occurring before the death of the deceased. These objections were sustained by the court.

Artie Norgard, a daughter of appellant, was called as a witness, and testified that she heard a conversation between Chris Norgard and appellant on the 5th day of February, 1938, wherein Chris Norgard stated to appellant that if the latter would come up when he wanted him to come, and manage his business until he got better, that he would consider the rest of the note paid, and that he would also pay appellant for his expenses in running back and forth, to which appellant agreed.

Isabell Daugherty, a witness called by plaintiff, testified that she saw Chris Norgard in bed at Eureka in the latter part of June, 1938; that he was ill and in bed at that time; and that at that time, in a conversation with Mr. Norgard, the latter stated that appellant was taking care of his business, and that appellant owed him some money and he was going to let him work it out by taking care of his business until he was able to take care of it himself.

Gertrude Tethrow, a witness called by appellant, testified

that she was Chris Norgard's nurse for several months prior to his death, and that Chris Norgard told her appellant would take care of his business because appellant had full charge of all of it, and that he and appellant had fixed it up about this note of $1,866.44, and that he and appellant had squared the bill and just called it a square deal for appellant to take care of his business for him.

Appellant was then granted permission to file an amended complaint, and appellant filed an amendment to complaint, in which counts 1 and 2 were amended by making the period of time during which it was agreed that appellant would take care of the business affairs of deceased "from that date during and while he, the said Chris Norgard, was ill," instead of "from that date until the death of said Chris Norgard," as set forth in the claim as filed, and in the original complaint.

After the filing of the amended complaint, the trial was resumed and appellant's counsel again called appellant as a witness and attempted to have him testify as to matters occurring before the death of Chris Norgard. The court sustained objections to such offered testimony, stating: "As to any facts, matters of fact occurring before the death of Chris Norgard, I am satisfied the witness is not a competent witness."

The case was then submitted to the court, and the court rendered judgment in favor of respondent estate, and this appeal is from said judgment.

Appellant's first contention is that subdivision 3 of section 1880, Code of Civil Procedure, does not apply to the case at bar, and that therefore he was a competent witness in substantiation of the allegations of his amended complaint. He asserts that this action is not one against an executor or administrator. Section 1880, so far as applicable here, reads as follows:

"The following persons cannot be witnesses: . . . 3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator upon a claim, or demand against the estate of a deceased person, as to any matter or fact occurring before the death of such deceased person."

This argument is ingenious, but without substantial merit. The claim is filed against an estate and not against an executor or administrator, and if allowed, is paid out of the estate

and not by the executor or administrator. The section is clearly intended to prevent any person having a claim against an estate from testifying as to any fact occurring before the death of such deceased person. The fact that the administrator in this case was himself suing the estate upon a claim filed by him, would not permit him to testify. The meaning and intent of the statute of frauds is clear, and it applies to all claimants against the estate of a deceased person.

Appellant next contends that he "was entitled to testify in substantiation of the allegations contained in count 2 of his amendment to complaint, by reason of the fact that such cause of action was not necessarily based upon any claim filed against the estate." Appellant then quotes said amendment, which reads as follows:

"It was furthermore orally agreed by and between this claimant and said Chris Norgard, on the said 5th day of February, 1938, that if this plaintiff would perform the said services hereinabove referred to for said Chris Norgard from the said 5th day of February, 1938, during the illness of said Chris Norgard, that said promissory note would, by said parties, to-wit: said Chris Norgard and said plaintiff herein, be considered canceled and paid in full; that said plaintiff is therefore entitled to have said note canceled and declared to be of no further force nor effect."

It appears from said allegations that appellant relies upon a contract or agreement between himself and deceased, and hence his asserted claim must be held to be based upon a contract. Section 707 of the Probate Code, so far as it is applicable here, reads as follows:

"All claims arising upon contract, whether they are due, not due, or contingent, and all claims for funeral expenses, must be filed or presented within the time limited in the notice or as extended by the provisions of section 702 of this Code; and any claim not so filed or presented is barred forever, . . ."

Therefore, if count 2 is based upon a claim, appellant would not be permitted to testify, and if said count 2 is not based upon a claim, then it is barred under section 707, *supra*.

Appellant's third contention is that he was a competent witness to substantiate the allegations of his affirmative answer to respondent's cross-complaint. As hereinbefore

stated, respondent filed a dismissal of the cross-complaint prior to the trial, and introduced no evidence in support thereof. Even if it were true that appellant, by incorporating in his answer to the cross-complaint by reference, the allegations of his complaint, and praying that the prayer of his complaint be granted, was entitled to introduce evidence in support of the affirmative allegations of his answer in spite of the dismissal of the cross-complaint, still this would not relieve appellant from the prohibition of subdivision 3 of section 1880 of the Code of Civil Procedure. The cross-complaint having been abandoned by respondent estate, and no evidence having been introduced by respondent in support thereof, appellant was in precisely the same situation with reference to the affirmative allegations of the cross-complaint as he was with reference to his complaint.

In the case of *George* v. *McManus,* 27 Cal. App. 414 [150 Pac. 73], the court said, at page 418:

"Respondent insists, however, that the statute does not apply to a case where the action is brought *by the personal representatives* of a deceased person to recover upon facts which occurred prior to the death of the testator, and that, inasmuch as defendants filed a counterclaim asking for affirmative action, such fact rendered the testimony of plaintiff competent. In *Sedgwick* v. *Sedgwick,* 52 Cal. 336, it is held that where an action is brought by an executrix upon a demand *not against,* but in favor of the estate, the defendant, though a party to the transaction had with the deceased, is, nevertheless, a competent witness in his own behalf in defending the action. It is apparent, however, upon an examination of the record presented, that the evidence of plaintiff was offered, received, and considered by the court in support of the allegations of his complaint. Since defendants had offered no evidence in support of their counterclaim when plaintiff was called to testify, it is clear therefore that such evidence was not offered in rebuttal of any testimony given by defendants' witnesses. The purpose of the rule is that where the voice of one party to a transaction is closed by death, the other will not be permitted to testify as to the facts of the transaction in enforcing a money demand against the estate of such deceased person. In our opinion, the case falls within the provisions of section 1880 of the Code of Civil Procedure, and it was prejudicial error

to permit plaintiff to testify as to the occurrences and facts upon which he based his claim and demand.''

Our conclusion is that the trial court did not err in holding that appellant was not entitled to testify as to matters occurring before the death of the deceased. The rule announced in subdivision 3 of section 1880, *supra,* is a salutary one, and one supported by sound public policy. Where the voice of one party to a transaction is closed by death, the other should not be permitted to testify as to the facts of the transaction in enforcing a money demand against the estate of the deceased person.

 The final question which we must consider is whether or not the record supports the judgment of the trial court. No evidence was introduced by respondent, and the only evidence admitted by the court was the testimony of the witnesses Artie Norgard, Isabell Daugherty and Gertrude Tethrow, hereinbefore referred to. The trial court is the sole judge of the weight and effect of testimony and of the credibility of witnesses, and is free to disbelieve them, even though they are uncontradicted, if there is any rational ground for doing so. (*Davis* v. *Judson,* 159 Cal. 121 [113 Pac. 147].) As was said by our Supreme Court in the very recent case of *Blank* v. *Coffin,* 20 Cal. (2d) 457, 461 [126 P. (2d) 868]:

''There are many reasons why a jury may refuse to believe a witness. Section 1847 of the Code of Civil Procedure provides: 'A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence; and the jury are the exclusive judges of his credibility.' Section 2061 (3) of the Code of Civil Procedure provides: 'That a witness false in one part of his testimony is to be distrusted in others.' In passing upon the credibility of a witness, the jury is entitled to consider his interest in the result of the case. (See cases collected in 27 Cal. Jur. 180, Sec. 154.)''

It must not be overlooked, however, that the verified claim of appellant, attached as an exhibit to the verified complaint of appellant, stated that it was mutually agreed between appellant and Chris Norgard that if appellant would take care of the business affairs of Chris Norgard ''until the date of the death of Chris Norgard,'' said promissory note would

be considered canceled at the date of the death of Chris Norgard. The trial court had a right to consider the statement of appellant in said claim, as to what was agreed between appellant and Chris Norgard, and said statement was certainly contradictory to the testimony of the three witnesses of appellant. The trial court found that it was not true that appellant and Chris Norgard entered into the agreement set forth in the claim, or the agreement set forth in the amended complaint, and also found that it was not true that appellant thereafter took care of the business affairs of Chris Norgard.

Applying the well settled principles of law hereinbefore set forth, to the instant case, we are satisfied that the evidence of appellant's witnesses was not so "clear, positive, uncontradicted, and of such a nature that it could not rationally be disbelieved," and that the record supports the findings and judgment of the trial court.

In view of the foregoing, the judgment is affirmed.

THOMPSON, J.—I concur. ■ The appellant may not complain of the defendant's dismissal of its cross-complaint before the trial began, for the reason that no affirmative relief was sought by the answer thereto, and because all of the issues involved therein were tried and determined in the suit which was founded on the original complaint.

The appellant, who was administrator of his father's estate, brought suit under section 703 of the Probate Code to cancel a note which he had executed, on the ground that it was fully satisfied by services rendered under an alleged agreement to that effect. An attorney was appointed to represent the estate, as authorized by that section. The estate answered the complaint, admitting the execution of the note, but denying the agreement to cancel the instrument and denying the alleged performance of services. It asserted that an unpaid balance of the note, in the sum of $1,866.44, remained due and owing to the estate. At the same time a cross-complaint was filed, alleging the execution of the note and that said balance remained unpaid and due to the estate. The plaintiff answered the cross-complaint, admitting the execution of the note, but alleging that it was fully paid. The answer contained no demand for affirmative relief. In effect, it contained no more than a denial of the essential allega-

tions of the cross-complaint. The prayer asked that the cross-complainant take nothing by that pleading.

The answer to the cross-complaint raised no issues which were not contained in the cause which was founded on the original complaint. Before the trial of the cause, the cross-complaint was voluntarily dismissed under the provisions of section 581 of the Code of Civil Procedure.

I am of the opinion that the cross-complaint was properly dismissed for the reason that affirmative relief was not sought by the answer thereto. But even though it be deemed that the answer did seek affirmative relief, which I do not concede, the dismissal was harmless because all of the issues which were raised by the answer were included in the cause which was founded on the original complaint and determined by the court on the merits of the case. In the case of *Hanson* v. *Goldsmith,* 170 Cal. 512 [150 Pac. 364], which was a suit to quiet title to real property, the cross-complaint of the defendant, which demanded affirmative relief quieting title in him as the alleged owner thereof, was dismissed over his objection. The court held that dismissal was harmless since the same issues were contained in his answer to the original complaint, and determined the merits adversely to him. The same relative situation exists in the present case.

The appellant complains of the dismissal of the cross-complaint because that procedure deprived him of the opportunity of testifying regarding his father's alleged agreement to cancel the note in consideration of services performed, since the cross-complaint was not founded on a claim against the estate, and his evidence would therefore have been competent, while that testimony was excluded in the action based on the original complaint, under the provisions of section 1880 of the Code of Civil Procedure.

There is no merit in that contention. It is not error to dismiss a cross-complaint, to which dismissal a pleader would otherwise be entitled, merely because the cross-defendant may thereby lose his right to testify against a dead man, contrary to the provisions of section 1880. That is particularly true when the answer to the cross-complaint raises no new issues which are not contained in the pleadings upon which the original action is founded. To so hold would result in circumventing the application of the wholesome provisions of section 1880, which were wisely adopted in the interest of jus-

tice. Rules of procedure should not be employed as a game of strategy to avoid the effect of sound principles of evidence.

Adams, P. J., concurred.

A petition for a rehearing was denied September 16, 1942, and appellant's petition for a hearing by the Supreme Court was denied October 15, 1942.