[Civ. No. 8419.   Third Dist.   Apr. 28, 1954.]

L. J. BARES, Appellant, v. CITY OF PORTOLA et al., Respondents.

Worthington, Park & Worthington, Leonard R. Worthington and Guernsey Carson for Appellant.

Winslow Christian for Respondents.

SCHOTTKY, J.—Appellant, a licensed general contractor doing business as Ted Bares Construction Company, was the successful bidder for the job of constructing certain sewerage system improvements for respondent city of Portola. Plans and specifications had been prepared and furnished to appellant and other prospective bidders when bids were solicited by respondent city. Upon the acceptance of appellant's bid, the parties entered into a written contract.

Appellant's bid, which was submitted to the city, contained the following provisions:

"The undersigned [appellant] has examined the location of the proposed work and is familiar with the plans and specifications and the local conditions at the place where the work is to be done.

. . . . . . . . . . . . . . .

"The undersigned understands that the quantities as set forth under the foregoing units are approximate only and are for the purpose of comparing bids and fixing the amount of bonds and agrees that these quantities may be increased or decreased, or the relative amounts of the various items varies without claim for damage or loss of anticipated profit, and that payment will only be made on the basis of the actual quantities of work performed."

The specifications, which are a part of the contract, provide in part as follows:

"The City reserves the right to make alterations by addition to or omission from the contract, specifications or drawings, which change or modification shall in no way affect or make void the contract. The difference in cost of the work affected by such change will be added to or deducted from the amount of said contract price, as the case may be, by a fair and reasonable valuation, which shall be determined in one or more of the following ways:

. . . . . . . . . . . . . . .

" . . . *No extra work shall be performed or change be made except upon a written order from the Engineer pursuant to authorization by the City Council stating that the extra work or change is authorized, and no claim for an addition to the contract sum shall be valid unless so ordered.*" (Italics added.)

The contract, itself, provides:

"That said Contractor agrees to receive and accept as full compensation for furnishing all materials and for doing all the work embraced and contemplated in this agreement the

prices as set forth in the proposal submitted to the City Council of the City of Portola on the —— day of ————, 1949, and the true copy thereof hereto attached; also, for all loss or damage arising out of the nature of said work, or from the action of the elements or from any unforeseen difficulties or obstructions which may arise or be encountered in the prosecution of the work until the acceptance thereof by the Owner; and for all risks connected with the work, and for well and faithfully completing the work and the whole thereof, in the manner and according to the said plans and specifications and the requirements of the engineer under them, to-wit: The prices as set forth in the Proposal for— . . .''

Appellant admitted that he was familiar with the provisions set forth above.

The contract was entered into on or about July 25, 1949, and appellant commenced the work on or about September 19, 1949, and continued to work on the job until July 15, 1950, when it was completed. Respondent city accepted the completed job on September 13, 1950.

It appears from the record that as the work progressed there were deviations from the plans, and certain difficulties were encountered because of the location of underground lines which were not correctly shown in the plans. Appellant testified to the following items as exceeding the performance required of him under the contract or as involving additional expense due to errors in the plans or specifications: (1) appellant was required by the city engineer to abandon, backfill and relocate a ditch when appellant, in excavating, struck a water line which was incorrectly shown in the plans (cost: $225); (2) in the area near the Western Pacific roundhouse, appellant was required by the city engineer to dig certain ditches deeper than was indicated in the plans (cost: $5,840); (3) appellant encountered unexpected difficulties in installing five manholes, owing to interference from other lines which were incorrectly shown in the plans (cost: $250); (4) in installing seven other manholes, appellant was required to excavate to greater depths than those shown in the plans (cost: $440); (5) appellant was required by the city engineer to backfill a ditch which exposed a city water line not shown in the plans, the backfilling being done to protect the line from freezing during the winter months and it being necessary to re-dig the ditch in the spring (cost: $400); (6) appellant was required by the city engineer to dig another ditch

(along Main Street) deeper than was indicated in the plans (cost, $365) ; and (7) appellant was required by the specifications to order more pipe, not readily resalable, than was actually used on the job and paid for by respondent city (cost: $147.86). The amount shown as ''cost'' in connection with each of the above items was the actual cost or a reasonable charge, according to the uncontradicted testimony of appellant. The total of these amounts is $7,667.86.

A dispute having arisen as to the amount due appellant, appellant commenced an action against respondents city of Portola and city council of city of Portola to recover the sum of $10,715.51 alleged to be due appellant for labor and materials furnished in performance of the contract. Appellant in his brief states that respondent city paid $3,047.66 of that amount, leaving a disputed balance of $7,667.85. This is the total of the amounts claimed for the seven items specified above, as set out in the third to the ninth causes of action, inclusive, in appellant's complaint. The first and second causes of action show different amounts, the first being a common count for materials furnished and services rendered, and the second being an action on the contract for the contract price, and both showing a total claim of $37,996.50 (apparently including the seven amounts), less a payment of $27,428.85, leaving a balance of $10,567.65, and the latter cause of action also admitting an additional tender by respondent city of $3,047.65 as final payment under the contract. It appears that the city did make progress payments totaling $27,428.85, and a final payment of $3,047.65, or total payments of $30,476.50. However, in view of appellant's statement we may assume that the only amounts now in dispute are those claimed for the seven items specified above.

The case was tried before the court, sitting without a jury, and the trial court found that the items in question, hereinbefore enumerated, were not in excess of the performance required of appellant under the contract, and found further that in making his bid appellant did not rely upon the plans, specifications, surveys, drawings, cuts or profiles prepared by the city engineer, but instead examined the location of the proposed work and assumed all responsibility for errors and omissions in the plans, etc. In accordance with said findings judgment was entered denying appellant any recovery, and this appeal is from said judgment.

Appellant outlines the issues upon this appeal as follows: ''There are no factual issues to be decided by this Court

because the evidence of the plaintiff stands undisputed. . . .

"The only issues before the Appellate Court are of a legal character which may be summarized as follows:

"I. May the trial court arbitrarily reject the uncontradicted testimony of one party where it is reasonable and is supported by documentary evidence and other facts?

"II. Is the City liable for services performed by a contractor at the request of its engineer above the original contract amount?"

The record shows that during the course of the work the city engineer (Kennedy) and/or his assistant (Manlove) drove off-set stakes and gave appellant written cut-sheets designating, from point to point, the depths to which the various ditches should be dug for the purpose of laying pipe. The specifications provide that all lines and grades will be given by the engineer. The cut-sheets are in evidence and hardly can be considered written orders covering a change in work. Appellant also had a scale map prepared which shows the excavations as indicated by the plans, and also as actually made by appellant. The evidence shows, and the court so found, that the work involved in appellant's first six claims (specified above) was performed by appellant, but the court also found that this was work required of appellant in his performance of the contract, that the city engineer was not negligent in the matter, that the $30,476.50 paid to appellant was payment in full under the contract, and that appellant was not entitled to any of the additional amounts claimed.

Appellant testified that it was customary in a job of this nature to make changes during the course of the job, and gave the following testimony on cross-examination:

"[MR. KEANE]: Q. Now, at the time this extra work was ordered as you have testified, did you ever get any authority in writing from the engineer? A. We have the cut sheets.

"Q. Aside from that? A. No, that is right.

"Q. Did you ever get any authorization by the City Council? A. I have never had authorization from a city council, in this particular job, or any other job.

. . . . . . . . . .

"Q. According to the notice of completion filed by the City of Portola the job was accepted on the 13th day of September, 1950. And according to my correspondence the first intimation that the City had as to any protest as to the amount due you was the 9th of November, 1950, in a letter dated on that date, from Worthington, Park and Worthington. Now, if

those dates are correct, and I understand counsel is stipulating they are, why is it you waited until after the job was completed before calling attention to the extra compensation? A. We expected the engineer to make the proper adjustments on his own.

"Q. But you knew the provisions of the contract setting up your remedies in the event you were doing work not called for by the contract, did you not? A. That is true.

"MR. WORTHINGTON: There is no time specified, counsel.

"MR. KEANE: No, but it states that no extra work shall be performed or change be made except upon a written order from the engineer pursuant to authorization by the City Council. Q. Why did you not insist upon it at that time, that such authorization be given you? A. It took us a little time to prepare these maps and figures.

. . . . . . . . . . . . .

"MR. KEANE: Q. The question was, why, before you did this extra work, that you believed was outside of the contract, did you not insist upon some sort of written authorization? A. We felt we had it in our cut sheets, that is all we have on many a job. You follow this and complete the job and then proper adjustments are made; that is the usual procedure. And where fairness is manifested by parties concerned, there is no difficulty.

"MR. KEANE: I move to strike that last as not responsive.

"THE COURT: The latter part may go out.

. . . . . . . . . . . . .

"MR. KEANE: Q. During all this time that these changes were ordered did you realize then there must have been some error in the plans and specifications? A. I certainly did.

"Q. And at that time you did not ask to be relieved of your obligations under the contract? A. That isn't normal procedure.

"Q. You did not ask for relief? A. We did not.

"Q. Did you at any time ask to make a new contract with the City of Portola? A. That was not indicated in this case either.

"Q. You never did? A. We did not.

"Q. In other words, you chose to stand on this particular contract? A. We chose to rely on the fairness of the engineer involved."

On redirect examination appellant testified that if he had demanded written authorization every time the engineer handed him a cut-sheet covering a change in depth, the job

would have had to be shut down, and this would have been contrary to normal procedure.

Appellant attacks the court's finding that the items in question were not in excess of the performance required of him under the contract, and also the finding that in making his bid appellant did not rely upon the plans, specifications, surveys, drawings, cuts or profiles prepared by the city engineer, but instead examined the location of the proposed work and assumed all responsibility for errors and omissions in the plans, etc. Appellant argues that his uncontradicted testimony showed that he relied solely upon the plans and drawings in making his bid and that, therefore, the work for which additional compensation is claimed was not covered by the contract. ▆ However, the rule is well settled that all reasonable inferences must be indulged in in support of the findings (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]), and in the instant case appellant's failure, during the progress of the work, to avail himself of the contract provisions for extra compensation, or even to suggest (until several weeks after the completed job had been accepted) that additional compensation was owing for the work in question, certainly supports an inference that he, himself, did not consider the work to be in excess of that required by the contract. His bid expressed his understanding that the quantities were only approximations, and his testimony shows that changes were customary in a job of this nature. ▆ And as this court said in *Norgard* v. *Estate of Norgard*, 54 Cal.App.2d 82, at page 89 [128 P.2d 566]:

"The trial court is the sole judge of the weight and effect of testimony and of the credibility of witnesses, and is free to disbelieve them, even though they are uncontradicted, if there is any rational ground for doing so. (*Davis* v. *Judson*, 159 Cal. 121 [113 Pac. 147].)"

See also *Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868]. In *Davis* v. *Judson*, 159 Cal. 121, the court said, at page 128 [113 P. 147]:

"It is insisted by appellants that this testimony of Wilson stood uncontradicted and that the court had no right arbitrarily to reject it and find to the contrary.

"While it is the general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted by the court as proof of the fact, this rule has its exceptions. The most positive testimony of a witness may be contradicted by inherent improba-

bilities as to its accuracy contained in the witness's own statement of the transaction; or there may be circumstances in evidence in connection with the matter, which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact; and as it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control its finding or conclusion denying the testimony credence, unless it appears that there are no matters or circumstances which at all impair its accuracy.''

Respondents in reply contend that the work performed by appellant was either covered by the contract, in which event it was to be paid for at the agreed contract price, or it was extra work, in which event any claim for extra compensation is barred by appellant's failure to obtain the written authorization required by the contract.

The court found that the work performed and materials furnished by appellant were covered by the contract and that plaintiff (appellant) ''did agree to receive and accept the sum of $30,476.50 as full compensation for furnishing all materials and for doing all the work embraced and contemplated in said contract and for all loss or damage arising out of the nature of said work or from the action of the elements or from any unforeseen difficulties or obstructions which may arise or be encountered in the prosecution of the work until the acceptance thereof by the owner; and for all risks connected with the work, and for well and faithfully completing the work and the whole thereof, in the manner and according to the plans and specifications and the requirements of the engineer thereunder.'' The court further found that under the written agreement ''it was provided that no extra work shall be performed or change be made except upon a written order from the engineer, pursuant to the authorization by the City Council stating that the extra work or change is authorized and no claim for an addition to the contract sum shall be valid unless so ordered. That at no time was there a written order made by Clyde C. Kennedy, the engineer, pursuant to authorization by the City Council of the City of Portola, stating that extra work or change be made and by such written order authorized.''

We are satisfied that the record amply supports the findings and judgment. Even if appellant were correct in his

contention that the so-called changes were ordered by the city engineer, it is clear that the specifications, which are a part of the contract, provided that "no extra work shall be performed or change be made except upon a written order from the Engineer pursuant to authorization by the City Council stating that the extra work or change is authorized, and no claim for an addition to the contract sum shall be valid unless so ordered." If appellant intended to seek compensation for any extra work or change, he should have proceeded to get the necessary authorization in accordance with the provisions of the contract. The purpose of such provisions is clearly to permit the city council to have control over the project and its cost, as otherwise a municipality which had voted a certain amount for a public improvement might find itself obligated to pay an amount greatly in excess of the contemplated cost of the improvement.

No other points raised require discussion.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied May 21, 1954, and appellant's petition for a hearing by the Supreme Court was denied June 23, 1954. Shenk, J., and Schauer, J., were of the opinion that the petition should be granted.