[Civ. No. 5450.   Third Appellate District.—March 26, 1936.]

RUFUS F. BISHOP et al., Respondents, v. HARRY C. MORROW et al., Appellants.

Charles J. Kelly and H. Sidney Laughlin for Appellants.

James B. Ogg, Zach Lamar Cobb and Earl A. Littlejohns for Respondents.

PULLEN, P. J.—Plaintiffs executed and delivered to Nate J. Matthews their promissory note for $30,000, due one year after date secured by a deed of trust upon certain real property. The note and deed of trust was assigned by Matthews to Harry C. Morrow, and by various assignments came into the possession of appellants herein, Arnold V. Morrow and Mignon J. Ittner, two children of Morrow. The note was not paid at maturity, and appellants were proceeding to cause the security to be sold when plaintiffs brought an action to cancel the note and deed of trust, alleging that there was no consideration therefor, and later filed an amended complaint, and from the judgment based thereon, this appeal is based,

alleging in addition to a lack of consideration, fraud and as a separate cause of action, set up an action to quiet title to the property involved.

Judgment was rendered in favor of plaintiffs, and the findings, in brief, disclose that Rufus F. Bishop and Ethel W. Bishop, father and daughter, had resided on the property in question as their home continuously for over fifty years. At the time the note here in question was executed Rufus F. Bishop was over the age of ninety years, and his daughter a woman entirely unfamiliar with business affairs. For many years the business of plaintiff had been cared for by his son, who died in 1924, and thereafter while plaintiffs were attempting to handle their affairs they met Nate J. Matthews, who represented to them he had their best interests at heart and induced them to invest large sums in certain vending machines. During this time Harry C. Morrow, a money lender, was acquainted with Matthews and knew of his various promotion activities. Plaintiffs in their dealings with Matthews, delivered to him many secured and unsecured notes, and in 1926, executed as co-makers with Matthews two notes for $3,000 and $4,000, payable to Morrow. Plaintiffs received no consideration whatsoever for these notes. When these notes became due, plaintiffs executed to Morrow a note for $7,000 secured by a deed of trust upon the home, in which trust deed Matthews was named as trustee. No consideration was received by plaintiffs for this note and Morrow knew it was given to renew the two prior notes.

In 1927 plaintiffs being obligated on a number of promissory notes to persons other than Morrow or Matthews, desired to raise money to meet the same. Thereupon Matthews represented to plaintiffs he could raise $30,000 upon the home place, obtaining the same from Morrow. In that way the $7,000 deed of trust held by Morrow could then be released and Bishop would have $23,000 to pay off the other outstanding notes. Thereupon plaintiffs having trust and confidence in Matthews, executed to him their note for $30,000, secured by a deed of trust. At that time, however, Matthews knew he would not receive $30,000 or any sum in excess of approximately $8,700 for the note, which amount Morrow subsequently paid to Matthews. Plaintiffs received nothing. Thereafter and before maturity, Morrow assigned the note and deed of trust to Liberty Bank of America, and the bank

immediately assigned the same to Fannie C. Morrow, wife of Morrow, and later the note and deed of trust was assigned by Mrs. Morrow to Arnold V. Morrow and Mignon J. Ittner, the court finding that all of these parties knew that no consideration whatsoever passed to plaintiffs, and that neither Fannie C. Morrow, Arnold V. Morrow nor Mignon J. Ittner paid any consideration of any kind for the transfer of the note and deed of trust. The court also found that at the time Matthews was named payee in the $30,000 note he was only a nominal payee and was acting as dummy for defendant Harry C. Morrow, solely for the purpose of giving to Morrow the color of a holder in due course; at that time also Morrow was in possession of such facts as to place him upon notice that Matthews was unable to advance any money to plaintiffs and that plaintiffs had received no consideration therefor. Prior to the sale of the property under the deed of trust this suit was pending and a *lis pendens* duly recorded. The court also found that plaintiffs had paid to Morrow on account of principal and interest the sum of $14,400. Prior to the trial both Rufus F. Bishop and Matthews died.

It is the contention of appellants that the evidence failed to support the finding that defendants were not holders in due course and that Matthews was only· a nominal payee and a dummy for Morrow.

The testimony discloses that Matthews had first attempted to get Morrow to accept a note to mature in two or three years but he refused, and Matthews under Morrow's direction, returned to plaintiffs and requested a one year's note, which they agreed to execute. He reported to Morrow he was getting a one-year note which Morrow was willing to accept. When the note was being signed by Miss Bishop she observed it was made payable to Matthews, and when she spoke to Matthews of that fact he replied that Morrow would not have it any other way. It also is in evidence that Morrow was told by Matthews that he and the Bishops were interested in the vending company, and Morrow also knew that Matthews had attempted to borrow from the bank and from him personally, and that Matthews was unable to advance any money to plaintiffs. Morrow also testified that Matthews told him he and the Bishops were equally interested in the vending company, that the Bishops were endorsing the note for Matthews,

and that he, Morrow, was loaning the money to Matthews personally.

The evidence clearly establishes that Rufus Bishop was old and infirm in mind and body and that Ethel Bishop had no previous business experience and that they were induced to sign the note upon the fraudulent representations of Matthews that they would receive $23,000 in cash and a cancellation of the $7,000 note. Morrow knew, as the court found and the evidence bears out, that before acquiring the note Matthews was unable financially to advance any money to Bishop on the note and that no money had been advanced to Bishop on account thereof, and he made no inquiry of the Bishops if they had received anything of value.

It is apparent from the foregoing brief summary of the evidence that appellants were neither purchasers without notice nor for value and were not therefore holders in due course.

Section 3133 of the Civil Code defines a holder in due course as one who has taken the instrument under the following conditions: "1. That it is complete and regular upon its face. 2. That he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact. 3. That he took it in good faith and for value, and 4, that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the persons negotiating it." A title is defective within the meaning of the foregoing paragraph when a person who negotiates the instrument has obtained the instrument or any signatures thereto by fraud, duress, force or fear or other unlawful means. (Section 3136, Civil Code.)

Notice of a defect in the title of the person negotiating the instrument may be actual, or knowledge of such facts that the taking of the instrument amounts to bad faith. Here Morrow knew of the age and physical condition of Bishop and the inexperience in business of the daughter. He knew of the financial status of Matthews and that he (Matthews) could not and had not advanced anything of value to Bishop. He also knew and dealt with Matthews on the theory the money was going into a joint enterprise and not to the Bishops and that he looked upon them as endorsers. He also knew that Matthews had not loaned to the Bishops anything on the $30,000 note, and he also knew at the time he acquired the note and deed of trust it had not been acknowledged and delivered

to Matthews, and that no title certificate had been issued, and that the deed of trust had not been recorded. After knowing these things Morrow met and talked to the Bishops but made no inquiry of them as to the consideration for the note nor did he tell them what he was giving for the note.

It is claimed that the cancellation of the note for $7,000 constituted sufficient consideration for the note of $30,000 but it must be recalled that the note of $7,000 was made up originally of two notes of $3,000 and $4,000 for which there had been no consideration, so the release of the $7,000 note did not therefore constitute consideration.

However, if it should still be contended that such was the fact, the record discloses that Morrow has already received a payment of $5,000 on account of the principal and interest on the unpaid balance in the sum of $3,600. The note of $7,000 appears, therefore, to have been more than repaid. It also appears that for this $30,000 note secured by real property appraised by Morrow for $45,000, he gave Matthews $8,500 in cash and the balance was made up of canceled notes, an unauthorized bonus and valueless stock.

It is not necessary to cite cases at great length to illustrate the clearly enunciated rule that the purchase of a note at a grossly inadequate price with knowledge of the maker's solvency but without inquiry as to the consideration, is sufficient to put a prudent person upon inquiry. (*Witty* v. *Clinch*, 207 Cal. 779 [279 Pac. 797]; *Flippen* v. *Abbey*, 135 Cal. App. 666 [27 Pac. (2d) 792]; *Jordan* v. *Grover*, 99 Cal. 194 [33 Pac. 889].)

Appellants attempt to establish that the note was obtained from the Bishops not through fraud but upon an unexecuted oral agreement, and cite 19 Cal. Jur. 867, *Splivalo* v. *Patten*, 38 Cal. 138 [99 Am. Dec. 358], and *Flood* v. *Petry*, 165 Cal. 309 [132 Pac. 256, 46 L. R. A. (N. S.) 861]. There are in those cases no allegation as here, that Matthews could not and did not intend to perform, which fact was known to Morrow, or at least of which he had sufficient knowledge to put him upon inquiry. As stated in *Kinkle* v. *Harper*, 7 Colo. App. 45, 53 [42 Pac. 173, 176], quoted with approval in *Flood* v. *Petry*, *supra*: "Whenever a bill or note is disposed of for a valuable consideration the holder is not bound to inquire whether the endorser has performed or will be able to perform the agreement into which he has entered, so long as

there is nothing suspicious or out of the usual course of business in the circumstances attending its issue."

■ Appellants also claim that the legal title to the real property standing in the trustee under the deed of trust precluded plaintiffs from maintaining an action to quiet title. That such a deed carries none of the incidents of ownership other than the right to convey upon default is clearly expressed in *MacLeod* v. *Moran*, 153 Cal. 97, 99 [94 Pac. 604].

The findings and judgment being fully supported by the evidence and sustained by the law, the judgment is affirmed.

Thompson, J., concurred.