[Civ. No. 14821.   Second Dist., Div. Two.   Dec. 13, 1945.]

ELMER BERGER, Appellant, v. MARGARET STEINER, as Executrix etc., et al., Respondents.

Williamson, Hoge & Judson, and J. M. McCroskey for Appellant.

Charles E. Beardsley for Respondents.

WILSON, J.—This is an action to foreclose a deed of trust on real property executed by Margaret Kitching Perky in favor of respondent Margaret Steiner to secure a promissory note for $10,000. In the circumstances hereinafter related the deed of trust and note were purportedly assigned to plaintiff by Miss Steiner to secure a loan for $3,000. From a judgment cancelling and annulling the assignments and refusing plaintiff's plea for foreclosure, this appeal is taken.

Mrs. Perky, elderly and in feeble health, requested her niece, Miss Steiner, to come from her home in the state of

Washington and care for her for the remainder of her life and agreed that in consideration of such services she would make a will bequeathing all of her property to Miss Steiner. Mrs. Perky executed her will according to the agreement and in addition conveyed the property in question in this action to herself and Miss Steiner as joint tenants.

One Irving H. Roth, an attorney at law who had been a friend of Mrs. Perky and of her deceased husband, who was also an attorney, became acquainted with Miss Steiner after she had undertaken the care of her aunt. Upon his advice Mrs. Perky also executed a deed of trust and a $10,000 note to Miss Steiner dated June 5, 1939. Roth advised the latter instruments as additional assurance to Miss Steiner that she would be compensated for her services and as protection to her against other relatives who might contest the will. The note and deed of trust were signed "Margaret Perky." The title to the property was vested in "Margaret Kitching Perky." At the request of the title company which was writing a guarantee of title, a similar deed of trust and note dated June 23, 1939, were signed with Mrs. Perky's full name and were delivered to Miss Steiner. These are the documents involved in this action. Roth suggested as a further precaution and protection to Miss Steiner and to aid further in the defeat of any attack that might be made by other relatives that she assign the deed of trust and promissory note dated June 23 to a third party. He suggested appellant, who was a friend and client of Roth, as being a trustworthy third party to whom the assignments could safely be made.

Miss Steiner was a stranger in Los Angeles and had no close friend upon whom she could rely and no one to whom she could appeal for counsel except Roth. She trusted him by reason of his having been a friend of the deceased Mr. Perky and adviser to Mrs. Perky after she became a widow. Pursuant to Roth's advice and relying on his promise that he would keep the papers safely in his own possession, Miss Steiner agreed to execute the assignments. (It will appear later herein that her name was forged to the alleged assignments.)

At that time Roth was indebted to Berger in the sum of $500 and when Berger pressed for payment Roth suggested that Berger loan the sum of $3,000, taking said assignments of the $10,000 note and deed of trust as security. Appellant had never previously heard of Mrs. Perky nor of Miss Steiner.

Roth told Berger that he and Miss Steiner had intended getting a loan from a bank but he did not feel that they could give a financial statement of the character required by the bank.

Roth and appellant went to the title company where the latter examined the papers and agreed to make the loan of $3,000. The note and deed of trust were recorded, a title policy was issued showing the deed of trust to be a first lien on the premises described therein, and appellant personally filed for record the assignment thereof to himself.

After delivering the papers to Roth Miss Steiner departed for Seattle and did not return to Los Angeles until the middle of August following. She then asked Roth for her papers. He said he had handed them to appellant and would get them for her. In December, 1939, Roth wrote a letter to Miss Steiner stating that he had a reconveyance and suggesting that she call and get it. He had not procured a reconveyance from appellant, but when she called on him he handed her the papers dated June 5 which had been incorrectly signed ''Margaret Perky.'' Miss Steiner assumed that they were the papers that had been correctly signed and that the others had been destroyed.

The loan of $3,000 not having been paid, Berger brought this action to foreclose the original deed of trust. After the commencement of the action Mrs. Perky died, Miss Steiner was appointed executrix of her will, and, as such, was substituted as a defendant in this action in the place of Mrs. Perky.

The validity of the original deed of trust and promissory note dated June 23 are not in question, the only dispute in the action being between Miss Steiner, the payee and purported assignor thereof, and Berger, the holder and purported assignee. Findings and judgment were in favor of Miss Steiner.

Appellant asserts that he is the holder in due course of the $10,000 note; that Miss Steiner, and not he, was guilty of negligence in the transaction, and that therefore he is entitled to recover; that Miss Steiner ratified the unauthorized action of Roth in pledging the deed of trust and note as security for the loan of $3,000. Miss Steiner, who will hereinafter be referred to as respondent, disputes these propositions and asserts that appellant was culpable and negligent and that the circumstances surrounding his dealing with Roth put him on notice as to the invalidity of the transaction.

1. *Does the evidence sustain the findings?* In discussing this question certain well known basic rules are applicable which have been recently referred to by this court. (*Buckhantz* v. *R. G. Hamilton & Co.*, decided November 27, 1945, 71 Cal.App.2d 777 [163 P.2d 756], and *Woodbine* v. *Van Horn,* decided December 3, 1945, *(Cal.App.) [163 P.2d 895] ; *Estate of Isenberg,* 63 Cal.App.2d 214, 216, et seq. [146 P.2d 424].) The evidence is conflicting and there being substantial evidence supporting the findings they are conclusive on appeal. In accord with the rules stated in said cases the findings are considered.

The court found that the signatures of respondent on the $3,000 note to appellant, the endorsement on the $10,000 note and the assignment of the deed of trust, and on the receipt for $3,000 delivered by Roth to appellant when the former received the proceeds of the loan were not her genuine signatures but were similar to the writings of her name on other documents established beyond doubt to have been made by Roth. The court also found that she did not authorize her signatures on the $3,000 note or on the receipt and that they were not ratified or approved by her. These findings relating to the nongenuineness of her signatures are sustained not only by the evidence of respondent but by the examination by the court of exemplars of her handwriting and of other documents upon which Roth had subscribed her name, and the finding that she did not authorize or ratify her signatures is amply sustained by the record. The evidence is uncontradicted that respondent did not sign the $3,000 note held by appellant. She testified that the signature was a forgery. Her counsel offered to share the expense of handwriting experts but appellant declined to participate in the cost. After she had so testified it was realized by counsel for both parties that Roth, who had previously been on the witness stand, had not been asked about the signatures. Counsel for appellant inquired if the court desired Roth to be recalled, to which the court responded: "No, if the plaintiff wants to establish the validity of the signature on the $3,000 note, the plaintiff can recall Mr. Roth and see what he says about it." Appellant, notwithstanding the apparent trend of the court's thought, did not recall Roth and was content to rest the matter on respondent's uncontradicted denial of her signature.

The finding that she ratified and acquiesced in the

*Reporter's Note: In *Woodbine* v. *Van Horn* a hearing was granted by the Supreme Court on January 31, 1946.

signing of her name to said assignments not for the purpose of an actual transfer thereof but for safe keeping only, is sustained by the evidence. She was a stranger in Los Angeles. She did not know Berger but she trusted Roth as an attorney and as a friend of her aunt and of the latter's deceased husband. She relied on Roth's statement that the procedure suggested by him was for her protection against contesting heirs after Mrs. Perky's death. She believed that he would retain possession of the documents as he promised to do. These facts sustain the finding that she was not negligent in placing the papers in Roth's possession for safekeeping and that her act did not effect any change in appellant's rights or status. Nor did she show any want of ordinary care in entrusting the documents to Roth for safekeeping. The facts, as hereinbefore related, demonstrate that Roth acquired no title to the note or deed of trust and that his acts did not convey title to appellant. The latter did not know respondent or Mrs. Perky prior to his receipt of the note and deed of trust and the assignments thereof but for a long time prior thereto he had been Roth's personal friend and client. The facts surrounding the transaction show that appellant relied throughout the negotiations upon Roth's representations that he had authority to act, and that no act of respondent influenced appellant in making the loan to Roth.

When respondent returned to Los Angeles from Seattle she asked Roth for her papers but the latter evaded her request. Later he admitted that he had delivered them to appellant but that he would get them for her. Subsequently she ascertained that the assignment to appellant was on record. Upon being confronted with this fact Roth admitted that he had used the papers as security, first for a loan of $1,000 and finally $3,000. She stated to Roth that appellant might hold the papers for more than that amount and he agreed to and did obtain a letter from appellant that he would hold them as security for said amount and no more. Roth at the same time said that he expected to receive some fees and that he would pay the amount due and recover the papers. This did not constitute a new agreement nor was it a ratification by respondent of Roth's unauthorized act. Apparently ignorant of business methods, she was merely trying to protect herself from further claims of appellant until Roth could pay his debt and return the papers to her.

Inferences may be drawn not only from the evidence

but from the demeanor of the witnesses and their manner of testifying. Appellant's evidence was replete with evasiveness, uncertainty, contradiction, and confusion. Only a few of his many controversions need be noticed. He testified that his loan of $500 to Roth was the only transaction he had had with the latter prior to the one involved here. He subsequently stated on cross-examination that Roth had acted as his attorney in a traffic violation with which appellant had been charged; that he and Roth had been friends for a long time, and that on many occasions he had taken Roth's money to race tracks for the purpose of placing bets for him. All of these events occurred before his receipt of the assignments in question. He testified that within a month after his mother's death he paid Roth $1,000 as a part of the statutory attorney's fees in the estate, but in his final account, verified by him as executor, he stated that Roth, as attorney for the executor, was entitled to attorney's fees in the sum of $1,611.14, which was the total statutory fee. In an action against Roth an attachment was levied on his fees. Thereafter an amended final account, verified by appellant, was filed in which appellant recited that Roth waived and renounced his right to any attorney's fees in the estate. A petition to set aside the attorney's fees, prepared later by Roth and verified by appellant but apparently not filed, was produced at the trial, wherein appellant swore that prior to his appointment as executor he had loaned Roth $3,000, and that after appellant's appointment as executor he had loaned an additional sum of $1,000 and asked that Roth's fee as attorney in the estate be set over to him as part payment of the existing debt. Whether appellant and Roth were successful by this vermiculation in evading the effect of the attachment does not appear, but the scheme furnishes an index to what might be expected of both in other transactions.

Appellant's statements were in complete contradiction, one with the other, with reference to the payment of the sum of $3,000 to Roth when the latter delivered the assignments to him. In his deposition taken before the trial he testified positively that he gave Roth three cashier's checks, one for $1,500, and two for $500 each, stating from whom the funds came, to whom the checks were payable, and how they were endorsed. The difference between the total of these checks and the sum of $3,000 he testified was represented by the $500 loan previously made by appellant to Roth. At the trial appellant

stated that he gave Roth a check drawn by the firm of Kerr & Bell, brokers, for $2,064.76, and cash amounting to $845.24, and that the balance of $90 represented prepaid interest on the loan.

After the delivery of the papers to appellant and prior to the trial of this action Roth had been convicted of a felony and had been disbarred from the practice of law. His evidence was contradictory as to many of the particulars relating to his dealings with respondent as well as to his transaction with appellant.

It is evident that the trial court gave but little if any weight or credence to appellant's evidence, and we can give no more. The court was justified in disbelieving and disregarding all of the evidence given by appellant and by Roth, or in believing only such portions thereof as, when considered with the other evidence, seemed to be credible. The argument that the findings are not supported by the evidence falls when the testimony of the two chief actors in the transaction is weighed against that of respondent, whose statements were not impeached or even questioned, coupled with the inferences that are reasonably deducible from all of the evidence in the case.

2. *Is appellant the holder in due course of the note and deed of trust?* He claims that he took the papers in good faith and for value and had no notice of any defect in the title (Civ. Code, § 3133) and that he holds the same in due course and free from any defenses of respondent. (Civ. Code, § 3138.) But section 3140 provides that ''when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course.'' (*Peoples State Bank* v. *Penello,* 67 Cal.App. 103, 106 [227 P. 190].) The evidence shows that the signatures of respondent on the assignments were written by Roth and not by respondent, that Roth had no title to the note and deed of trust, and that without respondent's knowledge, he transferred the same to appellant to secure a loan to himself. Appellant failed to sustain the burden cast upon him by said section 3140. The evidence which we have outlined shows that appellant should have been on his guard in negotiating with Roth. Appellant did not know respondent or Mrs. Perky but he did know Roth intimately. Roth told him that he and not respondent was to receive the proceeds of the loan. These

and other circumstances herein related destroy appellant's pretense of good faith or of holding in due course.

3. *Who was guilty of the greater negligence?* Section 3543 of the Civil Code provides: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." Admittedly respondent was an innocent party in the transaction. She delivered the papers to Roth relying on his advice that her protection against adverse claimants would be enhanced by so doing. She did not authorize him, actually or ostensibly, to transfer them. (Civ. Code, §§ 2315, 2316, 2317.) She did nothing to create an agency, either actual or ostensible. (Civ. Code, §§ 2299, 2300.) Her acts were all at the suggestion of an attorney whom she trusted because of his friendly relations with her aunt and who, because of his having been admitted to practice law, was presumably reliable.

Appellant's innocence does not appear from the record. That he did not trust Roth is apparent from his acts. He insisted upon having a receipt from Roth for the money loaned in addition to possession of the note purportedly signed by respondent and the endorsement and asisgnment of the other papers. He obtained the form of the receipt from another attorney, notwithstanding that Roth had been appellant's attorney. These and other acts indicated that appellant was on notice that there might be some obliquity in the transaction. Roth testified that he told appellant that the money was to go to him, Roth, and not to respondent. Yet appellant did not make any inquiry of respondent, with whom he had no acquaintance, as to Roth's authority to act for her or as to the authenticity of the signatures. Appellant did not rely on any act or statement of respondent but relied entirely on Roth.

The circumstances under which appellant made the loan were such as would create a presumption in the mind of any reasonable person that facts existed that would impeach the validity of the transaction insofar as respondent was concerned.

The purchase of a note for a grossly inadequate price without inquiry as to the consideration of the note is a circumstance to be considered in determining whether the purchase was made in good faith. Such fact is sufficient to arouse the suspicion of an ordinarily prudent person and to put him on inquiry as to the consideration. (*Jordan* v. *Grover*, 99 Cal.

194, 196 [33 P. 889] ; *Witty* v. *Clinch,* 207 Cal. 779, 783 [279 P. 797] ; *Bishop* v. *Morrow,* 12 Cal.App.2d 720, 725 [55 P.2d 1216].) Appellant claims to be the owner of the $10,000 note and deed of trust. He so alleged in his complaint and prayed judgment against Mrs. Perky for the full sum. After her death he presented a claim against her estate for the same amount and filed a supplemental complaint so alleging.

The court found on substantial evidence that the purported signatures of respondent on the assignments of the $10,000 note and deed of trust and on the $3,000 note and the receipt delivered to appellant for $3,000 were all forgeries and were not ratified or approved by respondent. No title to the note or deed of trust passed to appellant by reason of the forged documents and he is without right to retain the same or to enforce payment. (Civ. Code, § 3104; 8 Am.Jur. 318.) Respondent is not and never was indebted to appellant.

If appellant should prevail in the action respondent would unjustly lose $3,000 and interest thereon from the date of the note. If the judgment in favor of respondent is sustained appellant will still have the note signed by Roth and will have his right of action for recovery thereon.

4. *The pleadings.* In respondent's answer she specifically denied the allegation in the complaint that she assigned the note and deed of trust to appellant. In a separate special defense she alleged that no assignment was effectively made, but that she was induced by Roth to sign the assignments and that she received no consideration therefor and that any such transfer was void for lack of consideration. This was a permissible pleading of inconsistent defenses. The evidence shows that when the answer was verified and filed respondent did not know what papers she had signed. She thought she had signed the assignments as suggested by Roth. She did not ascertain as a certainty that she had not signed the documents until they were shown to her in court during the trial. Her pleading cannot be construed as an admission of the genuineness of the signatures.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied January 2, 1946.