[Civ. No. 17834. Second Dist., Div. One. Apr. 10, 1951.]

OTTO K. SIFFERT, Respondent, v. HARRY F. Mc-DOWELL et al., Appellants.

M. E. Lewis, Jr., Robert E. Krause, Allen R. Steele and Harry E. Sackett for Appellants.

John A. Ellis and Henry J. Sullivan for Respondent.

DORAN, J.—This is an action for malicious prosecution against appellants for damages sustained by the respondent Siffert on or about February 18, 1948, when Siffert was arrested and jailed for nine days under the provisions of sections

478-504 of the Code of Civil Procedure relating to the provisional remedy of arrest and bail. Respondent's civil arrest was incident to a claim and delivery action instituted by appellant Harry F. McDowell to regain possession of a Plymouth automobile in respondent's possession. A jury returned a verdict in favor of respondent Siffert in the amount of $25,000 which amount was reduced by the trial court to $5,500. The present appeal is from that judgment.

The record discloses evidence to the effect that the Plymouth automobile here involved, originally belonged to appellant Lorraine Busch, now the wife of appellant Harry F. McDowell, who transferred title thereto to Lucy Hillyer, the mother of Lorraine Busch McDowell. On or about July 24, 1947, respondent Siffert became associated as a real estate salesman with Lorraine Busch, and claims to have purchased the Plymouth at that time from Mrs. Hillyer for use in the real estate business. Appellants claim that the automobile was loaned to the respondent. According to appellants' brief, "Lucy Hillyer, orally, made a tentative sale . . . to respondent," and respondent "did not pay as much as a single dollar for the Plymouth automobile."

In reference to payment for the Plymouth, respondent testified: "I had my Terminal Leave Bond from the Army in Mrs. Busch's office, and I consented to turn it over to her and pay her, either through what I made at the office or by giving Betty (Lorraine Busch's daughter) lessons, and any property that I sold until the car was paid for." The terminal leave bond was in the amount of $225; a commission of $415 earned by respondent was said to have been applied on the purchase price; the balance of "$120.00 or so," was purportedly paid by giving skating and golf lessons to Mrs. Busch's daughter.

On August 26, 1947, Lucy B. Hillyer left for a trip to Canada and according to respondent, Mrs. Hillyer left the pink slip for the Plymouth with the daughter Lorraine Busch (McDowell) for delivery to respondent Siffert. However, in place of delivering the pink slip to respondent, Lorraine Busch, about October 9, 1947, turned it over to Harry F. McDowell on an alleged sale to McDowell for $860. At that time Lorraine Busch was not married to Mr. McDowell. It is further claimed that Lorraine Busch had received the Plymouth back from Lucy B. Hillyer on a trade for a Chrysler car.

Previous to the transfer of the Plymouth to McDowell, the car had been "borrowed" from the respondent "for a couple

of days.'' Upon Siffert's demand for its return Lorraine Busch stated: ''I can't give you that car. . . . It isn't yours. It is in the estate. Mother didn't have any right to sell it to you.'' Thereafter Lucy B. Hillyer returned from Canada and said, according to respondent, ''Why, Lorraine . . . she can't do that to you.'' Mrs. Hillyer took respondent to a lawyer, a claim and delivery action was instituted in the Santa Monica Municipal Court, the Plymouth was found on a street in Long Beach, and taken home by Siffert. Siffert's claim and delivery action was thereafter dismissed.

Following Siffert's recovery of the Plymouth, Harry F. McDowell instituted a claim and delivery action in the Los Angeles Municipal Court resulting in a trial before Judge Ida May Adams who found in favor of respondent Siffert. On appeal to the appellate division there was a reversal of this decision, and a retrial before Municipal Judge Fay and a jury again resulted in a verdict and judgment for Siffert. No appeal was taken from the latter judgment.

Incident to the claim and delivery action against Siffert, civil arrest papers were sued out; respondent was incarcerated in the county jail for nine days, fingerprinted, required to wear jail clothes, and taken, handcuffed, to the claim and delivery trial in municipal court. Following judgment in respondent's favor, the present action for malicious prosecution was instituted which resulted in a judgment for respondent.

Appellants allege reversible error in reference to the trial court's instructions as to probable cause. The jury was instructed that the three elements of malicious prosecution, namely malice, want of probable cause, and termination of the proceedings in the plaintiff's favor, ''must be established by a preponderance of the evidence before the plaintiff will be entitled to recover.'' Appellants' requested instruction defining probable cause was given, but complaint is made of the trial court's modification thereof in striking out the words, ''and that is a full defense.'' Appellants also object to the giving of an instruction in reference to the advice of an attorney, probable cause and malice, which states that ''It raises a question of fact for the jury.'' In another instruction requested by appellants, the trial court inserted the words ''then you may find'' in place of the bare statement that ''there was not such malice,'' etc. Appellants' argument in reference to these instructions is that probable cause is not a question of fact for the jury, but one of law for the court.

When considered in connection with all of the instructions given to the jury rather than in reference to isolated words and phrases used in the particular instructions singled out by appellants, no reversible error is apparent. With only minor changes appellants' requested instructions on probable cause, etc. were given by the trial court. These instructions embraced proper definitions and explanations of the elements of malicious prosecution which were to be applied by the jury to the facts in evidence.

As set forth in *Singleton* v. *Singleton*, 68 Cal.App.2d 681, 691 [157 P.2d 886], it is the rule that "When there is no dispute as to the existence of the facts relied upon to show probable cause, it is for the trial court to determine as a matter of law whether an inference of the existence of probable cause is warranted by such undisputed facts, but where, as in the instant case, the evidence bearing upon the issue of probable cause is in conflict in essential particulars, it is the province of the jury . . . to determine whether or not such facts are shown as will warrant or overcome an inference of probable cause (*Franzen* v. *Shenk*, 192 Cal. 572, 578 [221 P. 932])."

The record herein discloses a history of successive events, episodes, statements and circumstances, some of which are flatly contradicted by the opposing parties or by pertinent circumstantial evidence. Moreover, many of the surrounding circumstances are reasonably susceptible of different interpretations. There was, for example, a conversation in which appellants are said to have "stated that they didn't have to sign the complaint, either of them; that they had arranged it so the Marshal had caused his (Siffert's) arrest; that they were very much relieved." Were appellants, then, "relieved" because of a supposed escape from liability for bringing about respondent's arrest in connection with a civil action? There was also testimony to the effect that appellants stated "they were going to get Mr. Siffert, or words to that effect," and that appellant Harry F. McDowell said: "I am going to get that little S. O. B. out of there, and I am going to get that car too." In such a situation it was certainly a jury function to determine whether the elements of malicious prosecution had been established.

Appellants' argument that the complaint states no cause of action because the code sections relating to civil arrest were closely followed, and that respondent's arrest was therefore legal "even though unjust," is without merit. The

action herein was one for malicious prosecution rather than for false imprisonment. Doubtless, appellants followed the letter of the law in securing respondent's arrest; neither the validity of that law nor the jurisdiction of the municipal court is here questioned.

The fact that appellants were advised by an attorney is strongly urged as a defense to the action. Naturally, appellants insist that a full disclosure was made to the attorney in seeking that advice. As hereinbefore indicated, however, there were various matters affecting this phase of the case, and statements by appellants which might be taken as throwing light upon the question of good faith. Under such circumstances, the submission of this issue to the jury cannot be deemed improper.

As conceded by both parties, the law on this matter is unquestioned, and is corrected stated in *Starkweather* v. *Eddy,* 210 Cal. 483, 487 [292 P. 467], as follows: "It is also well settled that evidence of the fact that the defendant brought the charge on the advice of counsel . . . is admissible on the question of probable cause, but in order to constitute a defense it must affirmatively appear that the defendant made a full, fair and complete disclosure of all the facts and acted in good faith on the advice." And, as said in *Walker* v. *Jensen,* 95 Cal.App.2d 269, 274 [212 P.2d 569], "It is, however, true that the advice of counsel must be sought *in good faith* and not as a mere cloak to protect one against a suit for malicious prosecution or to refute the theory of malice."

From what has already been said, it follows that appellants' contentions that the trial court erred in failing to grant motions for a directed verdict and for a judgment notwithstanding the verdict which was returned in favor of respondent, are untenable. The cases cited in support of appellants' position, although doubtless correct under the facts there existing, cannot be deemed authority for a reversal in the present case.

As noted in respondent's brief, whether Mrs. McDowell did or did not personally sign papers leading to respondent's arrest, or whether such appellant was or was not a party plaintiff to the civil action of claim and delivery, is not decisive as to liability for false imprisonment. In *Blancett* v. *Burr,* 100 Cal.App. 61, 62 [279 P. 668], and elsewhere, the rule is laid down that one may be civilly liable who, without personally making the affidavit or complaint, has falsely, mali-

ciously and without probable cause, procured its issuance. "One who procures a third person to instigate a malicious prosecution is liable to the party injured to the same extent as if he had instituted the proceeding himself. . . . It is enough if he was instrumental in setting the law in motion and caused the prosecution to proceed." Under the evidence presented the jury may reasonably have found, and did so find that appellants, husband and wife, were both liable.

Nor is there any merit in appellants' argument that "Actions for malicious prosecution are, for reasons of public policy, 'not favored'." As noted by respondent, "This cliche never did mean as much as it seems to say." Properly applied, as the reviewing court points out in *Jaffe* v. *Stone,* 18 Cal.2d 146, 159 [114 P.2d 335, 135 A.L.R. 775], the term merely "means that public policy is in favor of the apprehension and punishment of criminals, and limits the person complaining of criminal charges by placing upon him the burden of proving the basic elements of the tort."

Under the record here presented, it cannot be said that the verdict and judgment are not supported by substantial evidence and reasonable inferences arising from the existing circumstances. The verdict returned by the jury was reduced from $25,000 to $5,500; no reversible error appears to have been committed, and no merit is presented in any of appellants' numerous contentions.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied April 26, 1951, and appellants' petition for a hearing by the Supreme Court was denied June 7, 1951.