338 P.2d 13]

[Civ. No. 5671.   Fourth Dist.   Apr. 27, 1959.]

ORVILLE J. MONROE, Respondent, v. D. W. LASHUS et al., Defendants; EDWARD B. FISH et al., Appellants.

Charles M. Hughes for Appellants.

Belli, Ashe, McBride & Gerry and Louis Hoffman for Respondent.

STONE, J. pro tem.*—This action arose out of an accident which occurred November 19, 1954, at about 1 a. m. on Highway 99, approximately one mile north of Kingsburg, California. At this point 99 is a divided highway with two lanes southbound and two lanes northbound. It is intersected by Stroud Road and there is no over or underpass at the intersection, the roadway being comparatively level and straight at this point. Both north and south of the intersection there is a divider strip on highway 99, between the southbound lanes and the northbound lanes, planted to oleanders. The evidence discloses that the weather was very foggy at the time of the accident. James N. Henson, a defendant in the action, was driving a flat-bed tractor and trailer upon which he was hauling sheet steel. Just prior to the accident he had been traveling north on 99, and as the accident occurred he was making a "U" turn at the Stroud Road intersection to go south. Henson's tractor and trailer blocked both southbound lanes as he executed the turn. Respondent, who was traveling south on 99, drove his tractor and trailer into the intersection, striking the Henson equipment between the tractor bed and the trailer. Two trucks which were following respondent pulled to the right and off the highway, one going into a vineyard, the other parking on the unpaved shoulder, but both avoided colliding with the equipment of either Henson or respondent. The defendant-appellant Fish next

*Assigned by Chairman of Judicial Council.

approached the scene, also traveling south, driving a tractor and trailer owned by defendant-appellant Dart Transportation Company. When he came upon the wrecked vehicles he pulled to the left over the divider, then across the northbound lanes and onto the railroad tracks to the east of the highway right of way. As he pulled to the left and onto the center strip appellant Fish struck the corner of the tractor which respondent had been driving and at that time respondent was still in the cab. The jury brought in a verdict in favor of respondent and against appellants Fish and Dart as well as defendant Henson. The trial court granted a new trial to defendant Henson because of errors of law occurring during the trial to which exception had been taken, but denied appellants' motion for a new trial. This is an appeal from the judgment entered pursuant to the verdict of the jury.

Appellants' first assignment of error is that the verdict of the jury was the result of chance. Appellants and their codefendants filed identical affidavits of two jurors which contain allegations that the jury arrived at its verdict by chance. The two affidavits stated that by prearrangement each juror wrote the amount of damages to which he or she thought the respondent was entitled on a slip of paper. The total was then divided by 12 and the quotient of $20,583.33 was rounded off at $20,500, and became the verdict of the jury. Code of Civil Procedure, section 657, subdivision 2, provides:

"The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party: . . .

"2. Misconduct of the jury; and whenever any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors; . . ."

Three counteraffidavits were filed by respondent alleging that the jurors, after discussing damages, did each write the amount he thought respondent should receive on a slip of paper and that the total was divided and the sum rounded off. However, each of the three counteraffidavits alleged that there was no agreement to be bound by such procedure, that it was used as a method of arriving at some suitable figure

for discussion and that after the completion of the mathematical computations the jurors discussed the amount and then by independent vote arrived at the verdict. The trial court denied appellants' motion for a new trial. In consideration of the contention that the verdict was the result of chance, two questions are presented: first, the sufficiency of the two affidavits filed by appellants and their codefendants; and second, the scope of the jurisdiction of an appellate court when reviewing an adjudication by the trial court which has weighed conflicting affidavits.

Whether a verdict is the result of chance depends upon the point of time during the deliberations that the jurors agree to be bound by the quotient verdict. ■ If the jurors agree to be bound by the result obtained by averaging the sums each juror has in mind in advance of knowing what the amount would be, the verdict is the result of chance. If the jurors simply average the sums, learn the amount thereof, and then each decides upon that amount as his verdict it cannot be said that such verdict is the result of chance. (*Will* v. *Southern Pac. Co.*, 18 Cal.2d 468, 477 [116 P.2d 44]; *Buhl* v. *Wood Truck Lines*, 62 Cal.App.2d 542, 544 [144 P.2d 847]; and *Griffith* v. *Oak Ridge Oil Co.*, 190 Cal. 389, 394 [212 P. 913].) ■ Thus, if a jury adopts a quotient verdict by independent action after the amount is made known to them, such approval subsequent to averaging the sums constitutes a valid verdict.

■ The two affidavits of jurors filed by defendants are identical and in part read as follows:

"(2) That in the deliberation of this matter the twelve jurors agreed to assess damages as follows:

"(a) Each juror to secretly write on a ballot the amount of damages he or she considered the plaintiff entitled to;

"(b) The total of the twelve ballots to be added together and this total then be divided by twelve;

"(c) The quotient thereby arrived at to be the verdict of this jury."

This language clearly reflects a chance verdict. However, immediately following paragraph 2 the following language appears in the affidavits:

"(3) Pursuant thereto the jurors did reach a verdict as follows:

"(a) Each juror secretly wrote on a ballot the amount of damage he or she considered plaintiff entitled to;

"(b) The twelve sums were added together and divided by twelve;

"(c) The result thereupon became $20,583.33;

"(d) The jury thereupon rounded off said figure to $20,-500.00.

"(4) Each juror was thereby induced to assent to said verdict and it was arrived at without further consideration or deliberation."

Subdivisions (c) and (d) of paragraph 3 indicate a consideration of the verdict after the quotient was announced. This alone would not change the nature of the verdict but when considered with paragraph 4, the question immediately arises as to whether "Each juror was thereby induced to assent to said verdict" after the sum of $20,500 was suggested or before each juror wrote down the sum he had in mind. The trial court could very well have considered this language ambiguous and insufficient to impeach the verdict of the jury.

However, it is not necessary to indulge in semantics to affirm the ruling of the trial court because respondent filed three counteraffidavits, one of them by the jury foreman which clearly negate the charge of a chance verdict. Pertinent portions of the three affidavits read as follows:

". . . at great length, we discussed the evidence we had heard in this case; that we agreed that the defendants had caused the accident and the plaintiff should be awarded damages; that we then discussed damages at great length. One of the jurors suggested that each of us write on a slip of paper the amount he felt should be awarded to Mr. Monroe for damages; that each of the jurors did write on a slip of paper the amount he or she felt should be awarded to Mr. Monroe in damages; that afterward we totaled the 12 figures and divided the total by 12; that we all then discussed at length and carefully considered the figure we arrived at by this means; that we each decided individually after this discussion to award Mr. Monroe the sum of $20,500.00 in damages for the injuries he had received; that at no time was there any agreement between any of us that any one of us or all of us would be bound by the figure we arrived at by this means . . . that the verdict which we reached in this case was not reached by collusion or previous agreement by the jurors but was the result of careful deliberation and lengthy discussion between us. . . ."

It was within the province of the trial court to weigh

the conflicting affidavits, and this court will not disturb the finding of the trial court in this regard. The rule governing the appellate court's consideration of a trial court's determination of conflicting affidavits is set forth in *Griffith Co.* v. *San Diego College for Women,* 45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349], as follows:

" 'In consideration of an order made on affidavits involving the decision of a question of fact, the appellate court is bound by the same rule as where oral testimony is presented for review.' (4 Cal.Jur.2d, § 614, p. 495.) (Citing cases.) When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed. (*Hayutin* v. *Rudnick,* 115 Cal.App.2d 138, 140 [251 P.2d 707].) " (See also *Buhl* v. *Wood Truck Lines, supra,* p. 545; *Ham* v. *County of Los Angeles,* 46 Cal.App. 148, 154 [189 P. 462].)

Appellants' second ground of appeal asserts that appellant Fish, the driver of the truck belonging to defendant Dart Transportation Company, was not negligent as a matter of law. The argument in support of this contention is simply that the evidence indicates that Fish was not negligent. Appellants assert that under the facts Fish was confronted by sudden peril and acted as a reasonably prudent person should have acted under the same circumstances. Respondent, by way of answer, points out various warning signs or indications which he alleges Fish should have seen or could have seen had he been vigilant. Respondent argues that had Fish observed these indications as he approached the scene of the accident, he would have had warning of the impending danger. He contends there were lights on vehicles involved in the first collision and on the two trucks which arrived at the scene after the collision but before appellant's arrival. These two trucks were parked to the right of and off the highway with their lights, including clearance lights, burning. Respondent also argues that reflectors on vehicles stranded on the highway, as well as the color of an aluminum trailer, should have been observed by appellant. In his reply brief Fish argues that such indications of danger were unobservable because of the location of the vehicles and weather conditions. It is readily apparent that the question of ap-

pellant's negligence is not a matter of law but a question of fact. It has become axiomatic that where the ultimate determination of the trial court depends upon its interpretation of a factual situation an appellate court will not attempt a reevaluation of those facts. The applicable rule is expressed in *Berniker* v. *Berniker*, 30 Cal.2d 439, page 444 [182 P.2d 557], as follows:

██ ''As has so frequently been said, it is the general rule that on appeal an appellate court (1) will view the evidence in the light most favorable to the respondent; (2) will not weigh the evidence; (3) will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact; and (4) will not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof. (Citing cases.) ██ It is not the province of the reviewing court to analyze conflicts in the evidence. (*Berger* v. *Steiner*, 72 Cal.App.2d 208, 213 [164 P.2d 559].)

██ Rather, when a finding of fact is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence contradicted or uncontradicted, which will uphold the disputed finding.''

██ The record before us reflects evidence of a substantial nature which supports the verdict of the jury finding appellant negligent.

Appellants' third ground of appeal is that the respondent was guilty of contributory negligence as a matter of law. This question is similar to that raised by the second ground of appeal as the ultimate determination is one of fact. The rule defined in *Berniker* v. *Berniker, supra,* applies to contributory negligence with the same force as it does to negligence. The question of whether or not respondent was driving too fast under the conditions which prevailed at the time of the accident and whether his speed was a proximate cause of the accident was presented to the jury and decided adversely to appellants. There is one additional aspect of the problem which is peculiar to this particular case. ██ The appellants-defendants offered and the court gave BAJI Instruction Number 144, which reads:

''The speed at which a vehicle travels upon a highway, considered as an isolated fact and simply in terms of so many miles an hour, is not proof either of negligence or of the exercise of ordinary care.

''Whether that rate of speed is a negligent one is a question

of fact, and the answer to which depends on all the surrounding circumstances. . . ."

At the time the accident occurred Vehicle Code, section 515, subdivision (a), subsection (1) was applicable, and it provided: ''(a) No person shall operate upon any highway any of the following vehicles when equipped entirely with pneumatic tires at any speed in excess of 40 miles per hour: (1) Any motor truck and trailer." Therefore, a different type of instruction from BAJI 144 should have been given, but as the error was caused by the appellants, who tendered the instruction, they cannot now complain. (*Siffert* v. *McDowell*, 103 Cal.App.2d 373, 376 [229 P.2d 388]; *Bernstein* v. *Maimes*, 126 Cal.App.2d 468, 478 [272 P.2d 529].)

Hence, the question as it comes to this court is one of fact and not one of law. It is our province simply to determine whether there is substantial evidence to support the verdict of the jury. It would serve no useful purpose to repeat the evidence which supports the verdict. The record does reflect substantial evidence to support the verdict and in view of the authorities hereinbefore cited we will not attempt to reweigh the evidence which supports the verdict as against that opposed to it.

The judgment is affirmed.

Griffin, P. J., and Mussell, J., concurred.