[Civ. No. 6693.   Fourth Dist.   May 8, 1962.]

N. B. STADLEY et al., Plaintiffs and Appellants, v. PINE ISLAND COOPERATIVE ASSOCIATION, Defendant and Respondent.

Hennigan, Ryneal & Nixen for Plaintiffs and Appellants.

Miller & Briggs, George H. Miller and Arthur E. Briggs for Defendant and Respondent.

GRIFFIN, P. J.—Plaintiffs and appellants N. B. Stadley and L. M. Starr brought this action against defendant and respondent Pine Island Cooperative Association, a corporation (hereinafter referred to as Association) for wages claimed to be due them and for money loaned to defendant Association over a period of years. This cause of action is pleaded in several different forms, including open-book account and account stated.

The gist of the action is the claim that defendant owes plaintiff Stadley $7,164 and plaintiff Starr $5,690 for work and labor performed for defendant. In addition, Stadley claims defendant owes him $2,441 for money he loaned the Association.

Defendant answered and denied generally these allegations and set up Code of Civil Procedure, section 339, subdivision 1, as a bar to recovery. A counterclaim alleged that plaintiffs falsely and fraudulently concealed entries in the Association's books and Association was thereby damaged in the sum of $20,000. This counterclaim was subsequently dismissed.

Defendant Association commenced an unincorporated association after a group of people around Hollywood came to plaintiff Stadley to inquire of Stadley and a health doctor he had associated with him about starting a health enterprise to grow papaya upon property in Florida totaling 84 acres and 71 lots which were subject to a trust deed of considerable size. The *modus operandi* of the Association was to sell certificates of interest in the corporation for the usual sum of $300. Many were paying monthly on the membership. The membership, when paid, would entitle the purchaser to a right to then buy a lot of his own selection. Apparently, no lots were purchased in the Florida tract, but members were supposed to be allowed to select one in a newly acquired Riverside County tract at some future date. By personal efforts and labor performed for the Association by members, certain credits were built up to apply on their accounts. Many hours of credit due these members is indicated on the books of the Association. It is also indicated that the Association operated at a loss during this entire period. Their equity in the present assets of the corporation is problematical.

Stadley handled the operation for some time. Payments from members fell off and the trust deed on the Florida property became delinquent. That land was sold in August 1952 and land consisting of about 200 acres was purchased in Southern California near Riverside, which land also was

subject to a trust deed. Stadley and Starr were business partners, being formerly associated in the medical appliance business and later in a cement block business in Riverside. After the unincorporated association was formed with Stadley as chairman of the governing committee and Starr as secretary-treasurer, the governing committee met on April 23, 1949, to authorize compensation for persons doing work on behalf of the Association. The minute order states, after fixing compensation for other employees: "Other employees shall be employed on an hourly basis. The amount to be paid to them shall not exceed $2.00 per hour and shall be approved by the committee or by a Board of Directors."

After the corporation was formed, plaintiffs were elected to the board of directors and on March 30, 1950, they were elected to office in the corporation, Stadley as president and Starr as secretary-treasurer. In the years following, Stadley kept all the corporate records and made the entries himself. Exhibit 3 shows that on March 30, 1950: "The matter of compensation for officers other than Mr. Haering was fixed at the rate of $2.00 per hour, for actual services rendered, and they were instructed to keep a record of time expended for the Corporation. The payments to be made in cash or credit on share and lot accounts."

All the financial records of the corporation were kept by Stadley in a "Greenwood Standard Bookkeeping Forms" book and this was the only book in which the financial records were kept. The secretary-treasurer admitted that she kept none of the financial records of the corporation. Throughout Stadley's handling of the finances of the corporation all records are somewhat vague and his methods were quite unusual. Many disbursements were made by Stadley in cash, with no apparent authorization from the corporation. Under Stadley's and Starr's management, payments became delinquent on the Riverside property and parcels of it were sold to meet payments on the trust deed and for the operation of the business, including expense accounts for Stadley. Apparently, many of those who bought or were making monthly payments on their memberships in the Association became uninterested. A general meeting of the stockholders was called. Plaintiffs were removed as officers of the corporation and others were elected and took over its operation. Upon removal of plaintiffs, demand was made by the new officers for the corporation's books and they were ultimately turned over to the Association's auditor for examination. Plaintiff

circulated letters to the entire membership claiming large sums were due them for back wages and claimed loans made by Stadley to the corporation. This action followed to recover these amounts. Plaintiffs testified at the trial and certain books were received in evidence. Much of the record consisted of plaintiffs' testimony and the entries made in the books respecting their claims.

The corporation books themselves showed no entry indicating the Association owed Stadley or Starr any amount for labor or services as an outstanding obligation of the corporation. Stadley kept a private five-year diary from January 1, 1947, to January 1951. Included among his personal notes were items such as: "Home all day," "Worked on bookkeeping—eight hours," or "Interviews." He summarized the hours indicated in the diary and otherwise and fixed it at over 2,000 hours of work; he testified that between January 1955 and December 1957 he did 809 hours of work; that over a period of nine years, and between 1949 and 1958, he spent one-third of the hours on the accounts of the corporation.

Mrs. Starr figured her time spent in attending meetings, showing people about the health-food program and taking papayas to meetings to demonstrate the program, amounted to 2,845 hours. She claimed her private book showed this number of hours and her first record of work was in 1949 and it lasted until 1957.

In accounting for their failure to have recorded on the Association's books the amount owing them, Mrs. Starr testified that any person who worked for the corporation was supposed to be "paid at a later time" when the corporation could afford to do so, and that no money was paid her for her time, only expenses.

Plaintiffs produced minutes of a meeting on April 8, 1951, reciting that at a directors' meeting it was suggested that the board members submit their claims for past services rendered to the organization; that certain ones had rendered a report and they were ordered allowed; that President Stadley had been keeping daily records of the number of hours put in for the organization previous to incorporation and afterwards and that the board members knew of the kind and amount of services he had rendered and he asked the board to fix the amount; that after some discussion, it was agreed that both he, as president, and Mrs. May (Mrs. Starr's former name), as secretary, should be allowed the maximum of $2.00 per hour, beginning April 10, 1949, and continuing until changed,

either by action of the board or by the membership. The corporate accounts do not indicate such an obligation of the corporation, nor do they indicate the amount of this alleged claim.

Defendant's affirmative defense that the major portion of this claim is barred by the Statute of Limitations is met by plaintiffs' claim that the corporation ratified the entire account and accordingly it was not barred; that in the subsequent letters to members, stating that the Association was indebted to plaintiffs for services performed, and no objection being made thereto, it constituted an account stated and plaintiffs were entitled to recover under that theory.

Stadley testified that he personally loaned money to the corporation to assist in the payment of delinquencies in the trust deed and other expenses. He testified that he paid out $400 to the trust deed holder on the Riverside property but was never repaid this amount by the corporation; that one of the corporation employees sued the corporation for wages past due and Stadley settled it for $900 and he advanced that amount for the corporation; and that he advanced $2,600 on account of back payments on the trust deed.

One member of the board, during this period (since 1956), testified that he never heard of Stadley's having any claim against the corporation for wages or salary. The corporation accounts do not definitely establish that these loans were made by Stadley to the corporation or, if made, that they were authorized by the corporation.

The evidence opposing the testimony of plaintiffs comes mainly by their own contradictions of, conflict in, and loss of memory as to the nature of the service performed and the amount involved, and other contradictory evidence from which the trial court might have disbelieved plaintiffs' testimony or not have given full credence to it. In one incident, plaintiff Stadley testified that he worked some considerable number of hours during certain years in keeping the books of account and soliciting membership in the Association. It appears that there were only one or two transfers of membership during that period and that Stadley, as president of the corporation, in order to justify the corporation's right to dispose of certain real property, filed an affidavit with the Franchise Tax Board stating, under oath, that neither the Pine Island Cooperative Association, a Florida corporation, or any of its officers, had exercised any corporate powers, rights or privileges and had not transacted any busi-

ness in the State of California and had not received any income from any source during the years 1955, 1956, 1957 and up to the date of said affidavit, which was April 3, 1958.

If true, the books of the corporation are not in accord with the affidavit and plaintiffs' claim that a great number of hours was spent working for the corporation appears to be without foundation.

The court found generally in favor of defendant and against plaintiffs and specifically found that no open book account or account stated existed between plaintiffs and defendant; that at all times mentioned, Stadley was the president and chairman of the board of directors of the defendant corporation and plaintiff Starr was the secretary-treasurer thereof and a member of the board of directors; that in plaintiffs' respective capacities as officers of the corporation, it was their duty to keep the books, records and accounts of the corporation and to keep the board of directors and membership informed of the financial position of the corporation; that plaintiffs falsely and fraudulently and with intent to deceive did conceal, misstate and falsify the entries in the books of the corporation to the extent that the corporation was unable to ascertain its financial position; that as a further result of the false records kept by plaintiffs, stockholders and creditors have been induced to invest and lend credit based on the financial condition of the corporation reflected by the plaintiffs' false records; that plaintiffs have not complied with the provisions of their alleged employment contract; that even if such were not the case, the said employment contract would be unenforceable because it does not meet the requirements of section 820 of the Corporations Code, since the said plaintiffs have not established, to the satisfaction of the court, that the contract or transaction was ''just and reasonable as to the corporation at the time they were authorized and approved'' (citing *Remillard Brick Co.* v. *Remillard-Dandini,* 109 Cal.App.2d 405 [241 P.2d 66] and *Kennerson* v. *Burbank Amusement Co.,* 120 Cal.App.2d 157 [260 P.2d 823]); that in view of these findings, it becomes unnecessary to make any determination with respect to other issues raised (i.e., statute of limitations and a question whether plaintiff Stadley was entitled to recover at all). There was received in evidence on behalf of plaintiffs a written assignment dated February 7, 1956, to L. M. Starr of all of Stadley's right, title and interest in all money due or that might become due to him from the Pine Island Cooperative Association for services

performed and money loaned to said corporation. Plaintiffs endeavored to show that this assignment was only for the purpose of security.

While the evidence produced by plaintiffs, if believed by the court, may well have justified a judgment in some amount against defendant, we find ourselves faced with the time-honored rule that it is within the province of the trial court to determine what credit and weight shall be given to the testimony; that an appellate court cannot control a finding or conclusion denying credence unless it appears that there are no matters or circumstances which at all impair the accuracy of the testimony. (*Davis* v. *Judson,* 159 Cal. 121 [113 P. 147].) The trier of fact may disbelieve all or any part of the testimony of a party or witness if it is tainted with evasiveness, uncertainty or contradictions, or may believe only such portions as seem credible in the light of other evidence. (*Berger* v. *Steiner,* 72 Cal.App.2d 208 [164 P.2d 559]; *Burns* v. *Radoicich,* 77 Cal.App.2d 697 [176 P.2d 77]; 19 Cal.Jur.2d § 476, p. 241.) We conclude that the findings were sufficient to dispose of the main issue and the judgment has evidentiary support.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.